[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 29.]

GENERAL MOTORS CORPORATION, APPELLANT, *v*. TRACY, TAX COMMR., APPELLEE.

[Cite as *Gen. Motors Corp. v. Tracy*, 1995-Ohio-294.]

*Taxation—Sales and use taxes—Use tax on purchases of natural gas from out-of-state vendors—Acquisition of natural gas from natural gas companies that merely market natural gas not exempt from tax under R.C. 5739.02(B)(7).*

(Nos. 94-642, 94-643 and 94-644—Submitted April 25, 1995—Decided August 9, 1995.)

APPEAL from the Board of Tax Appeals, Nos. 91-K-1558, 92-K-146 and 92-H-510.

———————————

{¶ 1} General Motors Corporation ("GM"), appellant, contests the assessment of use tax on its purchases of natural gas from out-of-state vendors.

{¶ 2} GM purchased natural gas from independent natural gas marketers to heat its manufacturing plants. These marketers obtained natural gas from producers outside the state and arranged for transportation to the initial receiving pipeline of the national natural gas pipeline outside the state. These marketers did not own the transportation equipment; they paid a fee to pipeline companies to transport the natural gas to the insertion points. GM took title to the gas at delivery to the receiving pipeline outside the state. GM then arranged to transport and deliver the natural gas to its locations in Ohio: the Lordstown plant, the Defiance Central Foundry, and the Packard Electric facility in Warren.

{¶ 3} The Tax Commissioner, appellee, assessed a use tax for various audit periods in these three cases because GM purchased the natural gas outside Ohio and consumed it in Ohio. GM appealed the commissioner's order to the Board of Tax Appeals ("BTA"), and the BTA affirmed the order (except for a penalty on

preassessment interest), citing for support its decision in *Chrysler Corp. v. Tracy* (Jan. 21, 1994), BTA No. 91-K-1523, unreported.

**{¶ 4}** These causes are now before this court upon appeals as of right.

_____

*Jones, Day, Reavis & Pogue*, *John C. Duffy, Jr.*, *Timothy B. Dyk* and *Gregory A. Castanias*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Barton A. Hubbard*, Assistant Attorney General, for appellee.

*Emens, Kegler, Brown, Hill & Ritter Co., L.P.A.*, *Paul D. Ritter, Jr.*, *Holley R. Fischer* and *Thomas W. Hill*, urging affirmance for amicus curiae, Enron Access Corp.

_____

**Per Curiam.**

**{¶ 5}** R.C. 5741.02 imposes a use tax on the storage, use, or consumption of tangible personal property in Ohio. R.C. 5741.02(C)(2) exempts from this tax acquisitions "which, if made in Ohio, would be a sale not subject to the tax imposed by sections 5739.01 to 5739.31 of the Revised Code." GM claims that the instant acquisitions would be exempt under R.C. 5739.02(B)(7) as sales of natural gas by a natural gas company.

**{¶ 6}** However, in *Chrysler Corp. v. Tracy* (1995), 73 Ohio St.3d 26, 652 N.E.2d 185, we upheld the determination of the Public Utilities Commission of Ohio that a vendor in the type of sales now before us is by definition not a natural gas company and held that R.C. 5739.02(B)(7) does not exempt this type of sale. Consequently, we affirm the BTA's decision as to this claim.

**{¶ 7}** GM also contends that the commissioner's application of this exemption statute violates the Commerce and Equal Protection Clauses of the Federal Constitution. According to *New Energy Co. of Indiana v. Limbach* (1988), 486 U.S. 269, 273-274, 108 S. Ct. 1803, 1807-1808, 100 L.Ed.2d 302, 308:

"It has long been accepted that the Commerce Clause not only grants Congress the authority to regulate commerce among the States, but also directly limits the power of the States to discriminate against interstate commerce. See, *e.g.*, *Hughes v. Oklahoma*, 441 U.S. 322, 326 [99 S.Ct. 1727, 1731, 60 L.Ed.2d 250, 255-256] (1979); *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 543-535 [69 S.Ct. 657, 663-664, 93 L.Ed. 865, 872-873] (1949); *Welton v. Missouri* 91 U.S. 275 [23 L.Ed. 347] (1876). This 'negative' aspect of the Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors. See, *e.g.*, *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270-273 [104 S.Ct. 3049, 3054-3056, 82 L.Ed.2d 200, 208-210] (1984); *H.P. Hood & Sons*, *supra*, at 532-533 [69 S.Ct. at 662-663, 93 L.Ed. at 871-872]; *Guy v. Baltimore*, 100 U.S. 434, 443 [25 L.Ed. 743] (1880). Thus, state statutes that clearly discriminate against interstate commerce are routinely struck down, see, *e.g.*, *Sporhase v. Nebraska ex rel. Douglas*, 458 U.S. 941 [102 S.Ct. 3456, 73 L.Ed.2d 1254] (1982); *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27 [100 S.Ct. 2009, 64 L.Ed.2d 702] (1980); *Dean Milk Co. v. Madison* 340 U.S. 349 [71 S.Ct. 295, 95 L.Ed. 329] (1951), unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism, see, *e.g.*, *Maine v. Taylor*, 477 U.S. 131 [106 S.Ct. 2440, 91 L.Ed.2d 110] (1986)."

{¶ 8} According to the testimony, the commissioner exempts sales of natural gas only if the selling companies own or operate the transportation and distribution equipment and deliver the natural gas to consumers in Ohio. GM reasons that only Ohio companies owning transportation and distribution equipment can qualify because only these domestic companies can physically deliver natural gas to Ohio consumers. Thus, so it argues, the commissioner's application is an undue burden on interstate commerce and invalid. The commissioner responds that he treats in-state and out-of-state purchases from

independent marketers of natural gas the same; he does not exempt either one's sales if it does not own the transportation and distribution equipment.

{¶ 9} We have before us purchases by GM of natural gas from a company that does not own any production, transportation, or distribution equipment. The commissioner claims that he would tax purchases from these persons whether they sold natural gas in-state or out-of-state. Thus, the commissioner's application of the statute does not benefit in-state purchasers by favoring in-state vendors over out-of-state vendors; he treats purchases from both the same. His application does not violate GM's Commerce Clause protection.

{¶ 10} On close inspection, GM actually argues that the commissioner's application burdens out-of-state vendors of natural gas. However, GM is not a member of that class and lacks standing to challenge the constitutionality of this application on that basis; our further comment on this question is inappropriate. *Indus. Energy Consumers of Ohio Power Co. v. Pub. Util. Comm.* (1994), 68 Ohio St. 3d 547, 557-558, 629 N.E. 2d 414, 422.

{¶ 11} Also, GM's equal protection argument is submerged in its Commerce Clause argument. It claims that the Equal Protection Clause prohibits Ohio from imposing a more onerous use tax on out-of-state companies engaging in interstate commerce than on domestic companies. However, as concluded in the Commerce Clause discussion, the commissioner does not favor in-state purchases over out-of-state purchases. If the vendor does not own transportation or distribution equipment, the commissioner does not exempt its sales of natural gas to Ohio consumers.

{¶ 12} Finally, GM contends that the BTA incorrectly determined that the commissioner did not abuse his discretion in remitting only a portion of the statutory penalty. According to *Jennings & Churella Constr. Co. v. Lindley* (1984), 10 Ohio St.3d 67, 70, 10 OBR 357, 359-360, 461 N.E. 2d 897, 900:

"R.C. 5739.13 mandates the imposition of a penalty in the event of an assessment. Remission of the penalty is discretionary. In *Servomation Corp. v. Kosydar* (1976), 46 Ohio St.2d 67 [75 O.O.2d 147, 346 N.E.2d 290], we held this discretionary power valid and constitutional as an exercise of the state's police power.

"Appellate review of this discretionary power is limited to a determination of whether an abuse has occurred. *Interstate Motor Freight System v. Bowers* (1960), 170 Ohio St. 483 [11 O.O.2d 240, 166 N.E.2d 229]. An abuse of discretion connotes a decision that is unreasonable, arbitrary or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157 [16 O.O.3d 169, 173, 404 N.E.2d 144, 149]; *Chester Twp. v. Geauga Cty. Budget Comm.* (1976), 48 Ohio St.2d 372, 373 [2 O.O. 3d 484, 358 N.E.2d 610, 611]." (Emphasis *sic*; footnote omitted.)

{¶ 13} We have consistently refused to find an abuse of discretion on the commissioner's remitting a portion of the statutory penalty, even in the face of good-faith efforts at compliance. *Kings Entertainment Co. v. Limbach* (1992), 63 Ohio St.3d 369, 371, 588 N.E. 2d 777, 779. Consequently, we affirm the BTA's decision on the penalty.

{¶ 14} Accordingly, we affirm the BTA's decision, since it is reasonable and lawful.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____