Defendant-appellant, Brian W. Kimpton, appeals from the judgment of the Franklin County Municipal Court overruling his motion to suppress the results of his breath test and finding him guilty of OMVI in violation of R.C. 4511.19(A). For the reasons that follow, we affirm the judgment of the trial court.
On December 19, 1997, an Ohio State Highway Patrol Trooper stopped defendant for speeding. Defendant was transported to the Grandview Heights Police Department where he submitted a breath sample for analysis. The defendant was subsequently charged with speeding and violation of R.C. 4511.19(A)(1) and (3). The complaint alleged that defendant had a blood-alcohol content of .169 when he operated his vehicle.
On January 7, 1998, defendant filed a motion to suppress, alleging, among other things, that the breath analysis was invalid because the solution used to calibrate the testing machine was not properly certified for use according to Ohio Department of Health ("ODH") regulations. The trial court conducted a hearing on May 21, 1998. At the hearing, defendant withdrew all branches of the motion except the issue of whether the particular batch of calibration solution at issue should have been approved by ODH at the time it was certified.
The prosecution rested after the parties stipulated to the admission of a certified copy of the certificate issued by ODH regarding "Guth Batch 97010," the batch at issue in this case. The defendant then called Dr. Craig Anthony Sutheimer, Chief Toxicologist and Chief of the Alcohol Testing Program of ODH.
Dr. Sutheimer testified that the calibration solution is the backbone of the quality control program in calibrating machines used to conduct blood-alcohol tests. Prior to certifying a batch of calibration solution for use by law enforcement agencies, ODH performs sampling of the calibration solution bottles in order to verify the manufacturer's target value of the solution. Dr. Sutheimer explained that when law enforcement officers receive calibration bottles, they come with a certificate of approval indicating that ODH has approved their use. When used in an approved device, the calibration solution should produce a result of .100 g/210 L, plus or minus .005.
Dr. Sutheimer testified in some detail regarding the scientific methods used to test the calibration solutions in question. Guth Batch 97010 was actually manufactured by Stiefel Research Institute of Oak Hill, New York, on January 8, 1997. Stiefel produced approximately 1,800 bottles of this particular solution. However, before Dr. Sutheimer traveled to Stiefel on November 21, 1997, no one at ODH had any personal knowledge or detailed information about the methods used by Stiefel to obtain the target value. In fact, prior to April of 1997, those involved with breath testing at ODH had believed that Guth Laboratories, Inc., of Harrisburg, Pennsylvania ("Guth") was the manufacturer. In actuality, Guth contracted with Stiefel to make the solution, and in turn, Guth warehoused and distributed the solution.
Guth sent samples from Batch 97010 to ODH for analysis, along with a "certificate of analysis" signed by the president of Guth stating:
 Random samples of Lot Number 97010 of Alcohol Certified Solution for Simulator were analyzed by gas chromatography and found to contain 0.1220 percent (w/vol) ethyl alcohol. When used in a calibrated Simulator, operating at 34°C +/- .2°C, this solution will give an alcohol breath tester reading of 0.100 percent BAC. The alcohol and water used in the solution were found to be free of any interfering substances.
However, Guth did no testing of the solution. The Guth certificate merely reiterated the information contained on the certificate of analysis sent from Stiefel to Guth.
On February 12, 1997, ODH received four bottles from Batch 97010. ODH tested the bottles on February 26, 1997, to determine whether the sample bottles were within five percent of the manufacturers' result. The test resulted in a finding of 1.24 mg/mL which corresponds to a target value of 0.102 g/210 L. The defendant stipulated that this result was within ODH's acceptable margin of error. Five different officials within ODH reviewed the finding and signed off on them. But, on April 1, 1997, when Dr. Peter Somani, Director of ODH, signed off on the certificate approving the calibration solution, the ODH certificate merely adopted the values from the Guth certificate of analysis. The ODH certificate of approval read in pertinent part:
 "This calibration solution contains 1.22 mg/mL ethyl alcohol in distilled water. When used according to the calibration checklists, it will produce a reading of .100 g/210 L ± .005 in the approved breath testing instrument, when that instrument is in proper working condition. * * *
In addition to the discrepancy between ODH's testing and Stiefel's testing, Dr. Sutheimer testified that Stiefel's procedure of sampling three bottles and ODH's procedure of sampling four bottles was scientifically inadequate to arrive at a target value. Dr. Sutheimer testified that a recognized scientific method or technique for a batch the size of Guth Batch 97010 would be to sample six to eight bottles.
After learning that Stiefel was the actual manufacturer of the calibration solution at issue, Dr. Sutheimer arranged to visit the premises. In addition, ODH located additional bottles from Guth Batch 97010 and arranged for additional testing at Stiefel's facility. Dr. Sutheimer personally audited the results from Stiefel's original analysis and the additional testing. After his review of the data, Dr. Sutheimer was confident that Stiefel's testing was reliable, and the proper target value for Batch 97010 should be .100. The defense stipulated that the results from the retesting were consistent with the manufacturer's original target value of .100.
Based upon the testing and retesting of samples from Batch 97010, the target values given, the certification process by ODH, the allowed margin of error, and the testimony of Dr. Sutheimer, the trial court found that the evidence presented showed that there was substantial compliance with the ODH regulations with respect to Batch 97010. Consequently, the trial court overruled the motion to suppress, deemed the evidence of defendant's breath test admissible, found defendant guilty, and sentenced him accordingly.
Defendant appeals, assigning as error the following:
 The trial court erred in overruling Defendant-Appellant's Motion to Suppress when the evidence established a failure to comply with the requirements of the applicable regulations set forth in Ohio Adm. Code 3701-53-01, et seq.
In reviewing a trial court's ruling on a motion to suppress, an appellate court must accept the trial court's factual findings if they are supported by competent, credible evidence and must independently determine as a matter of law whether the facts meet the applicable legal standard. State v. Guysinger
(1993), 86 Ohio App.3d 592, 594. Therefore, as a threshold matter, we must determine what legal standard to apply to the facts of this case.
The defendant argues the evidence established that ODH failed to substantially comply with its own regulations regarding breath testing, in particular the requirement that the solution be "* * * approved by the Director of Health." Ohio Adm. Code3701-53-04(A). The gist of defendant's argument is that at the time the certificate of approval was issued, ODH failed to adhere to scientifically reliable testing protocols and simply adopted the value supplied by the manufacturer. Defendant argues further that ODH knew whether the manufacturer had used satisfactory techniques to ascertain the target value, and ODH's own verification was scientifically inadequate. In other words, the approval of the relevant calibration solution was so flawed that it was ineffective to demonstrate substantial compliance with Ohio Adm. Code 3701-53-4.
In general, when faced with a challenge to the admissibility of a breath test on the grounds the state failed to comply with its regulations, the state must show substantial compliance, rather than strict compliance, with ODH regulations.Defiance v. Kretz (1991), 60 Ohio St.3d 1, 3. Initially, the burden is on the state to prove substantial compliance with the ODH regulations. State v. Plummer (1986), 22 Ohio St.3d 292,294. The prosecution bears this burden, however, only to the extent that the defendant takes issue with the legality of the test. State v. French (1995), 72 Ohio St.3d 446, paragraph one of the syllabus. Absent a showing of prejudice to a defendant, the results of a blood alcohol test administered in substantial compliance with Ohio Administrative Code regulations are admissible in a prosecution under R.C. 4511.19. See id. at paragraph one of the syllabus.
Here, the prosecution frames the issue differently. The state contends that the calibration certificate, signed by the director of health is proof of complete compliance with the Ohio Administrative Code regulations. Therefore, instead of a failure to substantially comply with agency regulations, the state argues that the defendant's attack on the procedure used to certify Batch 97010 is really a claim that the director of health abused his discretion by certifying Batch 97010 when it did not test a statistically significant number of samples and instead relied upon the distributor's certificate of alcohol content. The state further argues that there was no abuse of discretion because ODH's in-house testing was done to confirm that the sample was within the acceptable margin of error and that the retesting confirmed the accuracy of the original target value.
Although the defendant correctly argues that when challenged the state must show substantial compliance with ODH regulations, the defendant here is actually challenging the procedure used by the director of health in certifying or approving Batch 97010. R.C. 4511.19(D)(1) provides that breath "shall be analyzed in accordance with methods approved by the director of health." R.C. 3701.143 provides:
 For purposes of section 4511.19 of the Revised Code, the director of health shall determine, or cause to be determined techniques or methods for chemically analyzing a person's blood, urine, breath, or other bodily substance in order to ascertain the amount of alcohol, a drug of abuse, or alcohol and a drug of abuse in the person's blood, urine, breath, or other bodily substance. * * *
Among those methods approved by the director of health for breath testing is the requirement in Ohio Adm. Code3701-53-04(A) that the alcohol solution used to calibrate the breath testing instrument be approved by the director of health. "An instrument shall be checked using an instrument check solution containing ethyl alcohol approved by thedirector of health." Ohio Adm. Code 3701-53-04(A)(1) (emphasis added).
While it is the obligation of the director of health to approve the target value of each batch of calibration solution, there is no regulation concerning how the director is to scientifically establish or verify the target value. State v.Manzanares, Jr. (Apr. 16, 1999), unreported, Wood Cty. App. No. WD-98-033. Hence, the approval is an exercise of the Director of Health's discretion based on the scientific expertise required of his position. See R.C. 121.10 (the director of health must be either a licensed doctor of medicine or an "individual who has had significant experience in the public health profession"). Consequently, the appropriate legal standard in this case is whether the director of health abused his discretion in approving Batch 97010. Accord, State v.Cooper (May 20, 1997), Franklin App. No. 96APC09-1154, unreported (1997 Opinions 1845, 1862) ("Like the defendant inWorkman, [State v. Workman (1996), 79 Ohio Misc.2d 26] appellee had a right to challenge ODH's approval of Batch 95080 on the ground that such approval constituted an abuse of discretion");State v. Miller (Dec. 15, 1998), Marion App. No. 9-98-42, unreported. An abuse of discretion connotes more than an error of judgment; it implies a decision which is without a reasonable basis, one that is clearly wrong, arbitrary or unconscionable. Angelkovski v. Buckeye Potato Chips Co. (1983),11 Ohio App.3d 159, 161-162; Gen. Motors Corp. v. Tracy (1995),73 Ohio St.3d 29, 32.
At the time Batch 90710 was certified, the procedure approved by the director of health for certification was to accept the manufacturer's stated value for the concentration of alcohol in each batch of calibration solution if ODH's own independent testing confirmed that the manufacturer's stated value was accurate. Nothing in the statute or regulations permits ODH to regulate the outside laboratories that produce the calibration solution. Hence, in the exercise of his discretion, the director of health chose to approve or reject batches of solution if they passed ODH's own verification testing.
Here, Dr. Sutheimer testified that in initially setting the target value for Batch 97010, an inadequate number of samples were tested. Moreover, ODH's procedure of testing only four bottles for verification was also scientifically flawed. However, Dr. Sutheimer also testified that based on additional testing and his personal review of the manufacturer's data, the proper value for Batch 97010 was .100, the value certified by ODH. Dr. Sutheimer also indicated that because Stiefel is an FDA-approved laboratory, he had no reservations about the reliability of their testing.
The evidence before the trial court showed that ODH followed its procedure for approving Batch 97010. Relying on representations of the manufacturer and distributor as to the target value, it was the director of health's decision to approve batches of calibration solution if the sample bottles tested within five percent of the manufacturer's results. Based on the record before us, we do not find that the director of health was "clearly wrong" in relying on the manufacturer's stated target value when ODH's own testing served to verify that value.
However, once it became apparent that the manufacturer was not using a sufficient number of samples to set a target value, it became incumbent on ODH to perform additional testing. SeeMiller, supra. Such was the case with Batch 97010. Upon learning that the number of bottles tested to ascertain the target value was scientifically inadequate, ODH initiated further testing to confirm that the correct target value had been obtained. Further analysis proved the target value of .100 was correct. Accordingly, the defendant was not prejudiced by the decision to certify Batch 97010.
Based on the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Municipal Court is affirmed.
Judgment affirmed.
TYACK and PETREE, JJ., concur.