OPINION
Judith E. O'Neill is appealing the decision of the Clark County Common Pleas Court affirming an order of the State Personnel Board of Review (hereinafter "SPBR"), discharging her from her employment with the Clark County Building and Grounds Department.
O'Neill had been employed with Clark County as a classified employee for almost twelve years before she was terminated on November 5, 1998. On October 14, 1998, O'Neill was disciplined for being insubordinate, for conducting herself improperly, and for failing to demonstrate good behavior by arguing with her supervisor, Randall Conover. On October 28, 1998, Douglas Geyer, an independent hearing officer, conducted a hearing on the matter. Geyer heard statements from O'Neill's attorney and an attorney representing Clark County, and he reviewed an audiotape of the October 14, 1998, incident which Clark County had provided. Geyer concluded that Conover had given O'Neill a direct order several times to complete a specified work task, but that O'Neill "continually and over an extended period of time verbally accosted" Conover about the work, using demeaning and condescending words. The hearing officer concluded that O'Neill's intonation was "argumentative and antagonistic" and that she had "clearly failed to demonstrate good behavior and was insubordinate in her relationship" with Conover. As a result, O'Neill was terminated from her employment. The termination notice stated that her employment history had involved oral and written "counselings" and "reprimands," a two-day suspension and a seven-day suspension.
O'Neill appealed the hearing officer's decision, asserting that the removal was not proper under R.C. 124.34 and that the termination was retaliatory and discriminatory in nature. A hearing was held on March 15, 1999, before Administrative Law Judge (hereinafter "ALJ") Jeannette E. Gunn. The ALJ filed her report and recommendations on September 30, 1999, finding that O'Neill's due process rights had been "observed" properly and that Clark County had complied with the procedural requirements under the Ohio Revised Code and the Ohio Administrative Code in terminating O'Neill. The ALJ found that O'Neill had had a "lengthy history of discipline" which had provided her with notice that her actions constituted insubordination, as she had been counseled or disciplined for insubordination approximately eight times in the eleven month period preceding her removal. Based upon the testimony at the hearing, the ALJ concluded that O'Neill's actions on October 14, 1998, had constituted insubordination and that her termination was appropriate, as O'Neill had been given "ample notice of her improper actions, yet [had] failed to repeatedly correct that behavior."
O'Neill objected to the ALJ's opinion on November 12, 1999, contending that there had been no credible witnesses to support a conclusion that she had been insubordinate, there had been no prior disciplines on her record, and she had been denied due process at the pre-disciplinary hearing. Clark County responded to the objections. On December 29, 1999, the SPBR issued an order whereby three Clark County Commissioners unanimously voted to adopt the ALJ's recommendation and affirm O'Neill's termination.
O'Neill appealed the SPBR's decision to the Clark County Court of Common Pleas. On August 10, 2000, the trial court found that O'Neill's termination was supported by reliable, probative and substantial evidence that O'Neill had been insubordinate and had failed to act in good behavior on October 14, 1998, and additionally, that she had been insubordinate during the two years preceding her termination.
O'Neill now appeals that order, asserting one assignment of error.
 I. The common pleas court erred by finding that the decision of the State Personnel Board of Review upholding the termination of the Appellant, Judith E. O'Neill was supported by reliable, probative, and substantial evidence and in accordance with the law and therefore this court is authorized to reverse, vacate or modify the decision. (Ohio Revised Code Section 119.12 (Entry, August 9, 2000, Clark County Common Pleas, Case No: 00CV0039))
 In this lengthy and somewhat unorganized assignment of error, we believe that O'Neill is asserting two separate arguments: (1) that she was denied due process and the opportunity to respond during her pre-disciplinary hearing, and (2) that the trial court abused its discretion in finding that there was reliable, probative, and substantial evidence that O'Neill's conduct had constituted insubordination.
O'Neill first contends that she was denied due process when the ALJ failed to comply with proper administrative procedures under R.C. 124.34
at the October 28, 1998, pre-disciplinary hearing. O'Neill argues that because she did not testify at the pre-disciplinary hearing, her due process rights were violated and thus the discipline against her was inappropriate.
The termination of O'Neill was governed by R.C. 124.34(A), which states that no employee in the classified service of the state "*** shall be *** removed, except *** for *** insubordination *** [or] any other failure of good behavior[.]" Due process requires that an individual be given an opportunity for a hearing before she is removed from employment and thus deprived of a property interest. Cleveland Bd. of Educ. v. Loudermill
(1984), 470 U.S. 532, 538-9, 542. Although a pre-disciplinary "hearing" is necessary, it need not be an elaborate evidentiary hearing. Id. at 545. The formality and procedural requisites for a pre-disciplinary hearing vary, depending on the importance of the interest involved and the nature of the subsequent proceedings. Id., citing, Boddie v.Connecticut (1971), 401 U.S. 371, 378. "In general, `something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." Loudermill, supra, at 545, citing Mathews v.Eldridge (1976), 424 U.S. 319, 343. The essential requirements of due process are notice and an opportunity to respond. Loudermill, supra, at 546.
Under these guidelines, O'Neill was entitled to an oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity to present her side. Kennedy v. Marion Correctional Inst.
(1994), 69 Ohio St.3d 20. Despite O'Neill's claims that her hearing was inadequate because no testimony was offered by her and the only evidence offered by Clark County was the audiotape, we find that her due process rights were not violated. The transcript from the pre-disciplinary hearing reveals that Clark County explained the events which had occurred between O'Neill and Conover on October 14, 1998. Clark County proffered the audiotape of the conversation at issue demonstrating O'Neill's alleged insubordinate behavior. O'Neill was given an opportunity to respond, during which her attorney adequately presented her version of the events. O'Neill produced memoranda and work orders to rebut Clark County's evidence, and argued that the audiotape was unreliable.
Based upon the record, we find that the pre-disciplinary hearing before an independent hearing officer provided O'Neill with notice and an opportunity to respond pursuant to Loudermill. We do not find that O'Neill was prevented from presenting her version of the events. As such, we find that she was not denied her property interest in continued employment, without due process of law. See Loudermill, supra.
We note that O'Neill relies heavily on Adams v. Northeastern LocalSch. Dist. Bd. of Educ. (Dec. 4, 1998), Clark App. No. 98-CA-46, unreported, claiming that this case is "identical" to Adams. In Adams, the principal witness was not present at the pre-disciplinary hearing. This court held that Adams was denied due process because, had the principal witness been cross-examined, he would have clarified testimony of another witness, and the Board might have concluded that Adams' offense was much less serious, thus not warranting termination. We find the situation in Adams to be distinguishable from this case. As we previously stated, at her pre-disciplinary hearing, O'Neill responded to the allegations and provided the hearing officer with her version of the events. O'Neill has failed to demonstrate how the outcome would have been different had she cross-examined Conover. Without such evidence, we cannot say that the hearing officer would have concluded differently had she cross-examined Conover.
Accordingly, we overrule the first portion of O'Neill's argument.
O'Neill's second contention is that the common pleas court erred in finding reliable, probative and substantial evidence that O'Neill's conduct constituted insubordination.
A common pleas court reviews an order from the SPBR to determine if it is "supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12; Cook v. Maxwell (1989),57 Ohio App.3d 131. The SPBR's findings of fact are presumed to be correct but purely legal questions are reviewed de novo by both the trial court and the court of appeals. Univ. Hosp., Univ. of Cincinnati Collegeof Medicine v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339, paragraph one of the syllabus; see, also, Pernell v. Montgomery CountyBd. of Comr's (Nov. 15, 1996), Montgomery App. No. 15810, unreported.
O'Neill briefly mentions in her conclusion that the standard an appellate court must follow in these matters is to "independently review" the evidence and determine if the termination was "necessary and proper." We disagree. As to factual matters, an appellate court's standard of review of a decision regarding a matter from the SPBR is confined to determining whether the trial court abused its discretion. Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable.Gen. Motors Corp. v. Tracy (1995), 73 Ohio St.3d 29, 32.
While the trial court's decision is brief, we find no abuse of discretion because it is based upon reliable, probative and substantial evidence in the record that O'Neill was insubordinate, and that she had been exhibiting similar behavior for the two years preceding her termination. At the hearing before the ALJ, Conover testified that he had received a call on October 13, 1998, from the Public Utilities Department inquiring why the cabinets for the Garfield Building project had not yet been completed. Conover had assigned the project to O'Neill on September 24, 1998. On the evening of October 13, 1998, Conover examined the cabinets in the Paint Room, and he discovered that the only remaining work was the installation of the hinges on the doors and the placement of the doors onto the hinges.
At approximately 8 a.m. on October 14, 1998, shortly after O'Neill arrived at work, Conover instructed her to complete the cabinets. O'Neill, who had approached Conover for another assignment while she waited for the finish on the cabinet doors to dry, had also been assigned to paint a lunchroom. When Conover approached her with the instructions to finish the cabinet, O'Neill told Conover that she wanted to finish the paint job first. Conover again instructed O'Neill to finish the cabinet and he returned to his office. Approximately fifteen minutes later O'Neill signed out a drill from his office, which indicated to him that she was proceeding with the cabinet project. At approximately 8:45 a.m., Conover heard O'Neill's voice as she spoke to him in his office from across the shop forty feet away. Conover, who was on his way to another site, walked out of his office and began recording their conversation on a hand-held audiocassette recorder that he had brought with him. Conover stated that O'Neill's voice was "very loud" and that she was argumentative during the conversation. O'Neill argued with Conover that she could not complete the cabinet project that day because the amount of polyurethane finish on the doors made them too large to fit. O'Neill had scraped the finish from the cabinet doors, and as she spoke with Conover, she sanded the polyurethane from the remainder of the doors, claiming that the polyurethane material that she had used was contaminated from the misuse of coworkers. Conover testified that he repeatedly instructed O'Neill to finish the job, but she became louder, more argumentative, and non-cooperative. Conover stated that O'Neill worked on the cabinets from 8 a.m. to 9 a.m. and 12:30 p.m. to 1 p.m. that day, and finished them on October 15, 1998, after working on them between 9 a.m. and 2 p.m.
The trial court found that O'Neill's termination was appropriate due to her insubordinate behavior and her failure to show good behavior. O'Neill places great weight on the lack of definition of the word "insubordination" in the personnel manual. Insubordinate is defined as "unwilling to submit to authority." Webster's New Collegiate Dictionary (1976) 599. Based upon this definition, we find that the ALJ's finding that O'Neill was insubordinate is supported by reliable, probative, and substantial evidence in the record and is in accordance with law.
Additionally, the trial court found evidence in the record that O'Neill had been exhibiting insubordinate behavior for the two years preceding her termination. O'Neill claims that "there was no 2 year record of her behavior either presented no {sic} considered," and thus she did not, should not, and could not have known that her behavior constituted insubordination and that her actions could have resulted in discipline. Based upon our review of the record, we disagree. Conover and Ashworth testified that O'Neill had been reprimanded at least three times in the year prior to the incident on October 14, 1998, and that she had also received several "counselings" during that time. Conover and Ashworth stated that although the incidents were unrelated, they all were based upon O'Neill's generally improper conduct and insubordination. Furthermore, O'Neill had received a two-day suspension from work in May of 1998 due to insubordination toward Conover for loudly arguing with him over a work assignment and using profanity. In July of 1998, O'Neill received a seven-day suspension based upon charges of dishonesty, insubordination toward the director of personnel, and a failure of good behavior. We find no abuse of discretion in the trial court's conclusion that O'Neill's work history set forth a standard of conduct that should have placed her on notice that her actions rose to the level of insubordination.
We find that the trial court did not abuse its discretion in affirming O'Neill's termination based upon her insubordination and her failure of good behavior on October 14, 1998. Accordingly, we overrule O'Neill's assignment of error.
The judgment of the trial court is affirmed.
WOLFF, P.J. and BROGAN, J., concur.
 _____________ Young, J.,