[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 547.]

YOUNG, APPELLEE, *v.* OHIO DEPARTMENT OF HUMAN SERVICES, APPELLANT.

[Cite as *Young v. Ohio Dept. of Human Serv.*, 1996-Ohio-70.]

*Public welfare—Testamentary trust that expressly prohibits trustee from making any distribution that would affect the beneficiary's Medicaid benefits does not constitute a "countable resource" under Ohio Department of Human Services Medicaid Regulatory scheme set out in Ohio Adm.Code Chapter 5101:1-39.*

(No. 95-967—Submitted May 7, 1996—Decided September 4, 1996.)

APPEAL from the Court of Appeals for Allen County, No. CA94-07-0048.

_____

{¶ 1} Janet Lee Young, appellee, entered a nursing facility in August 1993. On October 12, 1993, she applied for Medicaid benefits. The Allen County Department of Human Services ("ACDHS") denied her application for the reason that Young was the beneficiary during her lifetime of a $53,000 irrevocable trust ("the Albright trust") created by her father George Albright. ACDHS determined that the trust constituted an available resource that exceeded the $1,500 resource limitation established by the Ohio Department of Human Services ("ODHS") for Medicaid eligibility.

{¶ 2} Young appealed the determination to ODHS, which upheld the determination of the ACDHS.

{¶ 3} Young then appealed the department's order to the Court of Common Pleas of Allen County pursuant to R.C. 5101.35 and 119.12. The court affirmed the administrative decisions and Young appealed that decision to the Allen County Court of Appeals which reversed the trial court, holding that the terms of the trust excluded it from the definition of "countable resource" under the Ohio Medicaid eligibility requirements.

**{¶ 4}** The cause is now before this court upon the allowance of a discretionary appeal.

_____

*Martin, Pergram & Browning Co., L.P.A.,* and *Dennis L. Pergram,* for appellee.

*Betty D. Montgomery,* Attorney General, and *Margaret E. Adams,* Assistant Attorney General, for appellant.

_____

**MOYER, C.J.**

**{¶ 5}** The issue to be decided in this appeal is whether a testamentary trust that expressly prohibits the trustee from making any distributions that would affect the beneficiary's Medicaid benefits constitutes a "countable resource" under the ODHS Medicaid regulatory scheme set out in Ohio Adm. Code Chapter 5101:1-39.

**{¶ 6}** The Allen County Court of Appeals held that the Albright trust corpus does not meet the definition of a "countable resource" and therefore may not be relied upon by ODHS as a reason for denying Young's Medicaid application. For the reasons that follow, we agree. The stated purpose of the Medicaid program is to provide assistance to financially needy citizens in their efforts to procure adequate health care. Ohio Adm. Code 5101:1-39-01(A). In view of this objective, ODHS promulgated regulations, consistent with federal law, which limit the available resources an individual may have if he or she is to receive Medicaid. Former[1] Ohio Adm. Code 5101:1-39-05 provided in pertinent part:

"(A) There are certain restrictions of value placed upon an applicant/recipient's resources in Medicaid. There is an overall maximum placed

---

1. The relevant language of the Ohio Administrative Code has recently been amended and now expressly provides that exclusionary clauses such as the one at issue here may no longer be considered in determining whether the trust constitutes a countable resource. See Ohio Adm. Code 5101:1-39-271(A)(2)(e), effective April 27,1995.

upon total nonexempt resources, which is termed the resource limitation. ***

"* * *

"(4)    'Resources' are defined as those assets, including both real and personal property, which an individual or couple possesses. ***

"(5)    'Personal property' is defined as those resources that are available for the support or maintenance of a person's physical needs or medical care.

"(6)    'Countable resources' are those resources remaining after all exemptions have been applied. These nonexempt resources are applied, or counted, toward a resource limitation; thus, these nonexempt resources are termed countable.

"(7)    The 'resource limitation' is the overall maximum value placed upon an applicant/recipient's total countable resources. For an individual, the resource limitation is one thousand five hundred dollars. ***

"(8)    Only those resources in which an applicant/recipient has a legal interest and the legal ability to use or dispose of are counted. If both legal interest and ability to use or dispose of the resources do not exist, the value of the resources is not counted."

{¶ 7} The dispositional language of the trust at issue in this litigation provides:

"(1)    The share to be held for Grantor's daughter, JANET LEE YOUNG, shall be held, managed and distributed by the Trustee as follows:  The Trustee shall pay such amounts of the net income and, if necessary, principal of this Trust as she deems necessary for the benefit of JANET LEE YOUNG, provided, however, that the Trustee shall not make any distributions of income or principal for the benefit of JANET LEE YOUNG which shall render her ineligible or cause a reduction in any benefit she may be entitled to receive, including, but not limited to, the following:  institutional care provided by the State or Federal government, Social Security, Supplementary Security Income, Medicare, and Medicaid. * * * Distributions of income or principal to or for the benefit of JANET LEE YOUNG

shall be made liberally and generously, but not for the purpose of providing for anything which could otherwise be provided for her by governmental or other assistance."

{¶ 8} The language of the trust instrument clearly prohibits the trustee from making distributions which would result in a reduction in benefits or elimination of Young's Medicaid eligibility. The restriction, however, was held unenforceable by the trial court on the grounds that it was an attempt to force Medicaid to accept primary liability for Young's nursing facility expenses despite the existence of substantial personal financial resources. The trial court found the enforcement of such a provision to be against public policy and therefore found that term of the trust instrument to be unenforceable.

{¶ 9} Under R.C. 119.12, the court of common pleas must review an agency order to determine whether "the order is supported by reliable, probative, and substantial evidence and is in accordance with law." Applying this standard, the trial court affirmed the administrative decision and held the trust provision unenforceable as a violation of public policy. In reversing the trial court, the court of appeals concluded that no public policy considerations rendered the trust provisions unenforceable.

{¶ 10} ODHS argues that the court of appeals' holding must be reversed because it thwarts the fundamental purpose of Medicaid which is to help those who are truly needy. ODHS also asserts that the appellate court's interpretation will, if upheld, permit all citizens to restrict the availability of their assets and defeat the Medicaid eligibility criteria, converting Medicaid from a safety net to an estate planning tool for the wealthy and middle income persons. Therefore, ODHS urges that the court of appeals be reversed and the trust provision held unenforceable as contrary to important public policy. We do not agree.

{¶ 11} The primary responsibility for the support of an individual lies with that individual, and a trust created for the benefit of an individual will be considered

an available resource upon application for Medicaid unless the applicant's access to the trust principal is restricted. Former Ohio Adm. Code 5101:1-39-271(E). This principle is well established and is not disputed by Young. It is Young's position, however, that her use of and access to the trust is restricted.

{¶ 12} It is axiomatic that a grantor may dispose of his or her property in any manner chosen so long as the disposition is not prohibited by law or public policy. Neither party to this dispute contends that George Albright was under any obligation to provide for the support of his adult child. Had Albright not chosen to establish the trust and name his daughter beneficiary, there would be no question as to her eligibility to receive Medicaid benefits.

{¶ 13} Though the issue before us is one of first impression in Ohio, the majority rule from other jurisdictions appears to hold that if the purpose of a trust is to supplement rather than supplant Medicaid (or other government benefit programs), the instrument will be enforceable as drafted. See *Trust Co. of Oklahoma v. State ex rel. Dept. of Human Serv.* (Okla. 1991), 825 P.2d 1295; *Tidrow v. Dir. of Family Serv.* (Mo. App. 1985), 688 S.W.2d 9.

{¶ 14} In *Tidrow*, the trust at issue was created by a father for the benefit of a retarded adult son. The instrument in *Tidrow*, a testamentary trust, contained language expressing the settlor's intent "that payments from the trust to or for [the beneficiary] were to supplement, rather than supplant, the benefits to which [the beneficiary] would otherwise be entitled." *Id*. at 12. The language of the trust instrument was less restrictive than in the case at bar, yet the court held that the intent of the settlor was controlling, and found that his intent was to supplement state support. *Id*.

{¶ 15} Evidence of the intent, in *Tidrow*, included language of the instrument providing for payments to the beneficiary throughout his life and a provision for the remainder of the trust to go to the beneficiary's brother upon the beneficiary's death. The court reasoned that these provisions clearly indicated that

the settlor did not intend the entire corpus of the $175,000 trust to be dissipated within a few years' time from paying for the beneficiary's institutional care. Id. The court thus held that the trust did not constitute an available asset under the federal law applicable both in *Tidrow* and the case at bar.

{¶ 16} The *Tidrow* court also observed that the effect of the trust was only to continue providing what the father had provided for his son while he was alive. Based on that reasoning, the court found: "The conclusion is compelling that the father intended his trust estate, the existence of which was triggered by his death, to do for [the beneficiary] what his father did for him in life: to supplement the benefits received from the State." *Tidrow* at 12. The same is true of the Albright trust.

{¶ 17} In the case at bar, the language of the trust instrument is more precise than in *Tidrow*. Albright expressly directed that "the Trustee shall not make any distributions of income or principal for the benefit of JANET LEE YOUNG which shall render her ineligible or cause a reduction in any benefit she may be entitled to receive, including, * * * Medicaid." Albright clearly did not intend for the trust to take the place of Medicaid. The court of appeals found that there was "no practical difference" between the case at bar and those cases, such as *Tidrow* and *Trust Co. of Oklahoma*, involving a trust instrument expressly stating that the trust was intended to supplement Medicaid benefits. We agree.

{¶ 18} ODHS would have us treat "supplement" as a controlling word without which the trust restriction may not be enforced. We reject such a rigid and formalistic rule. We find that ODHS's approach would not serve the ends of justice and is not required in this case by any special circumstances demanding that we raise form over function. We prefer a standard analysis that requires us to determine the intent of the settlor from the language of the instrument, rather than to attribute intent on the basis of a magic words rule.

{¶ 19} The plain meaning of the restrictive language in the present case is that Albright intended to provide his daughter with a source of supplemental support that would not jeopardize her access to basic assistance from Medicaid. The absence of the word "supplement" is not determinative of the settlor's intent to supplement or supplant the beneficiary's Medicaid support.

{¶ 20} Our resolution of this case, however, is guided most directly by the language of the administrative regulations themselves, as was the judgment of the court of appeals. Former Ohio Adm. Code 5101:1-39-271(E) stated: "If the individual/beneficiary's access to the trust principal is restricted, the principal is not a resource to the individual." Under former Ohio Adm. Code 5101:1-39-05(A)(8), a resource will not be counted unless the applicant has both a legal interest in the resource and the legal ability to use or dispose of the resource. Janet Young has neither.

{¶ 21} First, Young's interest in the corpus of the trust is equitable rather than legal. *Maguire v. Trefry* (1920), 253 U.S. 12, 16, 40 S.Ct. 417, 419, 64 L.Ed. 739, 751; *Thornton v. Stanley* (1896), 55 Ohio St. 199, 208, 45 N.E. 318. Second, the language of the trust gives the trustee sole discretion over distributions made to Young (limited by the proviso that the trustee may not make any distributions affecting Young's Medicaid eligibility). We conclude, therefore, that because Young has no control over the distributions that the trustee decides to make for her benefit, she does not have the ability to use or dispose of the resource. The Albright trust, thus meets neither the former Ohio Adm. Code 5101:1-39-05(A)(8) nor former 5101:1-39-271(E) requirements for countability.

{¶ 22} Finally, we decline, as did the court of appeals, the invitation to hold the Albright trust provision unenforceable on public policy grounds. We prefer to rely on the plain regulatory language in effect at the time this litigation arose.

{¶ 23} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

RESNICK, PFEIFER and COOK, JJ., concur.

PFEIFER, J., concurs separately.

DOUGLAS, J., dissents.

F.E. SWEENEY and STRATTON, JJ., separately dissent.

———————————

**PFEIFER, J., concurring.**

{¶ 24} I concur because of the limited effect our decision today will have.  The loophole exploited in this case has been closed by the recently adopted Ohio Adm.Code 5101:1-39-271(A)(2)(e).  While exclusionary clause in the Albright trust constituted a nifty piece of legal craftsmanship, it would make for unacceptable public policy were it applicable in many cases beyond this one.  the world of Medicaid eligibility is rife with enough duplicity and treachery without this court allowing a further opportunity for abuse.

———————————

**STRATTON, J., dissenting.**

{¶ 25} I respectfully dissent from the majority opinion.  Where a child has reached the age of majority and the obligation to support has ceased, I strongly believe it would be against public policy to allow a parent to create a trust where the trust income or trust corpus can go to the child at the discretion of the trustee, except when such distributions would render the child ineligible for medical assistance from the government.

{¶ 26} The purpose of the trust, established by Young's father, was to generously and liberally provide income to Young in all circumstances, except where she might be entitled to receive Medicaid or Medicare benefits. The trust contained the exclusionary provision which stated:

"The Trustee shall pay such amounts of the net income and, if necessary, principal of this Trust as she deems necessary for the benefit of JANET LEE YOUNG, provided, however, that the Trustee shall not make any distributions ***

which shall render her ineligible or cause a reduction in \*\*\* Medicare, and Medicaid [benefits]."

{¶ 27} The obvious thrust of this language is an attempt to bar the trustee from making any distribution that would render Young ineligible for public assistance. Otherwise, however, distributions of the trust income or principal were to be made "liberally and generously."

{¶ 28} Young entered a nursing home in August 1993. The trustee was billed for Young's stay. The trustee, citing the trust language, refused to pay the bill. The trust had a res of $53,000. Young then sought Medicaid eligibility to pay the bill. Under the provisions of the trust, the remainder of the trust corpus would pass to any of Young's surviving children upon her death. As a result, Young had assets that were available to pay at least some of the nursing home bill. However, pursuant to the trust, those assets would pass to her children. The taxpayers were left with the burden of caring for Young.

{¶ 29} It would be a different scenario if such a child had already entered the nursing home and a grantor chose not to give any of his assets to that child. While certainly not commendable, a grantor is free to do with his inheritance as he sees fit, as long as it is not contrary to public policy. However, these assets had already transferred by trust to Janet Young and were to be "liberally and generously" used for her benefit, unless the government could pick up the tab. I would find that to allow a trust to distribute income or principal for virtually any purpose except for purposes that would eliminate or reduce Medicaid is against public policy because it shifts the beneficiary's financial responsibility to the taxpayers despite the fact the beneficiary has the financial means to pay for his or her own medical expenses. Medicaid is a safety net for those who are destitute, not insurance coverage for those who can pay their medical expenses like Young. Obviously, the limiting language of this trust is against public policy because it circumvents the purpose behind Medicaid. Where trust language is against public

policy, the court has a duty to nullify such trust language. See *Bob Jones Univ. v. United States* (1983), 461 U.S. 574, 591, 103 S. Ct. 2017, 2028, 76 L.Ed.2d 157; *United States. v. Taylor* (N.D.Cal. 1966), 254 F. Supp. 752.

F.E. SWEENEY, J., concurs in the foregoing dissenting opinion.

_____