CARNAHAN, Appellee,

v.

OHIO DEPARTMENT OF HUMAN SERVICES, Appellant.

[Cite as *Carnahan v. Ohio Dept. of Human Serv.* (2000), 139 Ohio App.3d 214.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 99–L–094.

Decided Oct. 2, 2000.

*Robert S. Frost,* for appellee.

*Betty D. Montgomery,* Attorney General, and *Patrick W. Beatty,* Assistant Attorney General, for appellant.

WILLIAM M. O'NEILL, Judge.

Appellant, Ohio Department of Human Services, appeals from a decision of the Lake County Court of Common Pleas in an administrative appeal regarding the eligibility of appellee, Mary C. Carnahan, to receive Medicaid payments. The following facts are relevant to a determination of this appeal.

Appellee is an unmarried, fifty-three-year-old woman who is mildly retarded and suffers from cerebral palsy and arthritic knees. In 1989, she was approved for Medicaid benefits for the disabled. In June 1996, appellee underwent bilateral knee-replacement surgery. Thereafter, she was placed in the Lake Med Nursing and Rehabilitation Center, where she still remains. She is confined to a wheelchair.

On January 25, 1980, appellee's mother, Catherine R. Carnahan, established a revocable trust and funded it with her own assets. Appellee was the named beneficiary of the trust. The trust became irrevocable upon Catherine Carnahan's death on March 4, 1994. Under the terms of the trust, appellee received no fixed payments, but disbursements have been made on her behalf for clothing and personal effects. The corpus of the trust exceeds $500,000, and the trustee is Bank One Trust Co., N.A.

Article IV of the trust, states:

"1.a) The Trustee shall pay, in its absolute discretion, during the lifetime of my daughter, such amounts of the net income and/or principal of the trust estate as the Trustee deems necessary or advisable for the satisfaction of my daughter's special needs, and any income not so distributed shall be added to principal from time to time. As used herein, 'special needs' refers to the requisites for maintaining my daughter's good health, safety and welfare when, in the discretion of the Trustee, such requisites are not being provided by a public agency, office or department of any state or of the United States. 'Special needs' shall include * * * medical and dental expenses * * *.

"b) This trust is created expressly for my daughter's extra and supplemental care, maintenance, support and education in addition to and over and above the benefits she otherwise receives or may receive as a result of her handicap or disability from any local, state or federal government, or from any other private agencies, any of which provide services or benefits to handicapped persons. It is my express purpose that this trust be used only to supplement other benefits received by her.

"c) It is my intent, as expressed herein, that because my daughter is developmentally disabled and unable to maintain and support herself independently, the Trustee shall ask that my daughter's guardian or conservator, as appropriate, seek support and maintenance for her from all available public resources, including (but not limited to) the Supplemental Security Income Program (SSI), the Ohio Supplemental Income Program (SIP), the Medicaid Program, and any additional similar or successor programs. The Trustee shall take into consideration the applicable resource and income limitations of any public assistance programs for which my daughter is eligible when determining whether to make any discretionary distributions.

"d) It is my further intent that no part of the corpus of the trust created herein shall be used to supplant or replace public assistance benefits of any county, state, federal or governmental agency that serves persons with disabilities that are the same or similar to the impairments of my daughter. For the purposes of determining my daughter's eligibility for such benefits, no part of the principal or income of the trust estate shall be considered available to her. In the event the Trustee is requested by any department or agency to release principal or income of the trust to or on behalf of her * * * the trustee shall deny such request, and may, at its discretion, defend, at the expense of the trust estate, any contest of this Article or other attack of any nature. * * * [N]o part of the corpus hereof, nor principal or undistributed income, shall be subject to the claims of voluntary or involuntary creditors for the provision of care and services, including residential care, by any public entity, officer, department or agency of any state, or of the United States, or any other government agency."

Thus, it is clear from the express language of the trust that it was Catherine Carnahan's intent to limit the availability of trust funds for purposes of determining eligibility for public resources such as Medicaid. Medicaid is a federal program, in which Ohio chooses to participate, which reimburses certain costs of medical treatment for the needy. Each participating state develops a plan which includes reasonable standards for determining eligibility for and the extent of medical assistance. Section 1396a(a)(17), Title 42, U.S. Code. Ohio has established a Medicaid resource limitation of $1,500, and all of an individual's available nonexempt resources are counted toward that limit. Ohio Adm.Code 5101:1–39–05(A)(8).

On November 7, 1997, a case worker for the Lake County Department of Human Services ("LCDHS") received an alert from the income eligibility verification system, which commenced the process for verifying appellee's income to determine her continued eligibility in the Medicaid system. LCDHS determined that the trust set up for appellee's benefit constituted an available resource and had a value that exceeded the $1,500 limit for Medicaid eligibility. On April 24, 1998, LCDHS notified appellee that her Medicaid benefits would be terminated on May 31, 1998.

Appellee timely appealed the decision to the Cleveland District Office of the Ohio Department of Human Services. A hearing was conducted on September 8, 1998. On October 16, 1998, the decision of LCDHS was affirmed. Appellee appealed this decision to the Ohio Department of Human Services, which, on November 17, 1998, also affirmed the decision of the LCDHS.

On December 16, 1998, appellee filed an administrative appeal of the decision in the Lake County Court of Common Pleas. The common pleas court reversed the decision of the Ohio Department of Human Services on May 18, 1999. The court concluded that the trust should not be counted toward appellee's available resources for purposes of determining Medicaid eligibility.

Appellant timely filed a notice of appeal and has now set forth the following assignments of error:

"1. The common pleas court erred by failing to apply Ohio Adm.Code 5101:1–39–271(A)(2) to a non-self-settled trust.

"2. The *Carnahan* court is in error because it failed to comply with the Ohio Supreme Court's holding in *Bureau of Support v. Kreitzer* (1968), 16 Ohio St.2d 147, 45 O.O.2d 480, 243 N.E.2d 83."

In the first assignment of error, appellant contends that the trial court erred by failing to apply Ohio Adm.Code 5101:1–39–271(A)(2) to a non-self-settled trust. In essence, appellant argues that the trust must be included among appellee's available resources in determining Medicaid eligibility. We disagree.

The trust contains language granting the trustee discretion to make payments for appellee's health, safety, and welfare. However, under the terms of the trust, the trustee was prohibited from making distributions that would supplant or replace Medicaid. This prohibition is known as an exclusionary clause. Under Ohio Adm.Code 5101:1–39–271(A), "[t]he CDHS must consider whether, and to what extent, a trust is counted in determining eligibility for medicaid." However, before a trust can be examined, pursuant to Ohio Adm.Code 5101:1–39–271(A)(2), certain provisions in a trust must be disregarded. That section provides:

"The policy set forth in this rule applies to trusts without regard to the following:

"(a) The purpose for which the trust is established;

"(b) Whether the trustee has or exercises any discretion under the trust;

"(c) Any restrictions on when or whether distributions can be made from the trust;

"(d) Any restrictions on the use of distributions from the trust.

"(e) No clause or requirement in the trust, no matter how specifically it applies to medicaid, or other federal or state programs, precludes a trust from being considered under the policy in this rule."

Ohio Adm.Code 5101:1–39–271(A)(3) then sets forth seven factors to be considered in cases involving non-self-settled trusts, which are trusts created by someone other than the recipient. It provides:

"Regardless of when it was created, a trust created for the benefit of the applicant/recipient by someone other than the applicant/recipient must be examined as a possible resource or source of income for the applicant/recipient.

"(a) The CDHS shall not automatically consider this type of trust unavailable. The CDHS shall review the trust document to determine:

"(i) Who created the trust?

"(ii) Is the applicant/recipient the trustee or beneficiary?

"(iii) If the applicant/recipient is the trustee, was the trust created with his own resources? Can he revoke the trust even if it was not created with his own funds and use the funds for his own personal benefit?

"(iv) If the applicant/recipient is the beneficiary, does he have restricted access to the trust principal? Is the trust revocable or irrevocable?

"(v) Is there a fixed amount of payments to the beneficiary?

"(vi) If so, what is the amount, frequency, and type of payment?

"(vii) Is there a reasonable possibility that, either upon request or court action by the beneficiary, the beneficiary could gain access to the principal or payments (or increased payments) from the trust?

"(b) From the particular combinations of factors that make up the trust, the CDHS shall determine the appropriate treatment of the trust."

In the present case, the trial court properly acknowledged that "Ohio Adm. Code 5101:1–39–271(A)(2), particularly sub-paragraph (e), constitutes a powerful tool by CDHS to overcome attempts by citizens to restrict the availability of their assets and defeat the Medicaid eligibility criteria, thereby making them eligible for Medicaid." However, the trial court concluded that based upon the decision of the Supreme Court of Ohio in *Young v. Ohio Dept. of Human Serv.* (1996), 76 Ohio St.3d 547, 668 N.E.2d 908, the foregoing administrative code section was inapplicable because appellee had not funded the trust with her own assets, and it was clearly the intent of appellee's mother not to supplant public support. We agree.

Looking at the factors set forth in Ohio Adm.Code 5101:1–39–271(A)(3)(a), it is clear that the trial court reached the proper decision. The trust was not created by the beneficiary but, rather, by her mother with her own resources. Appellee is the beneficiary, not the trustee, and has no authority to revoke the trust and use the funds for her own benefit. The trust is irrevocable, and there are no fixed payments to appellee, and, in fact, no payments have been made for purposes of health care. Finally, it would be difficult to determine whether appellee could gain access to the principal of the trust or at least to regular payments from the trust were she to institute court action. Thus, the weight of the evidence suggests that the trust in question *not* be treated as an available asset in determining appellee's Medicaid eligibility. There is no good policy reason to prohibit a mother from establishing a safety net for her medically needy daughter to ensure that she is taken care of above and beyond any basic care that is provided by public programs.

While in the right situation, there are reasons that Ohio Adm.Code 5101:1–39–271(A)(2) can be applied to a non-self-settled trust, the facts of the instant cause do not support such an application. Appellant's first assignment of error is without merit.

In the second assignment of error, appellant asserts that the trial court erred by failing to comply with the holding of the Supreme Court of Ohio in *Bureau of Support v. Kreitzer* (1968), 16 Ohio St.2d 147, 45 O.O.2d 480, 243 N.E.2d 83. In essence, appellant argues that the holding in *Kreitzer* supports its position that there is a reasonable possibility that appellee could access trust funds to pay her medical bills.

In *Kreitzer,* a subrogation action was brought by the Bureau of Support in the Department of Mental Hygiene and Correction against cotrustees under a testamentary trust to compel the cotrustees to reimburse it for care and support that was furnished to the beneficiary of the trust. The Supreme Court of Ohio held that the government agency was entitled to be reimbursed under the equitable doctrine of subrogation where the cotrustees had the "sole and absolute discretion" of making disbursements that were "necessary" for the beneficiary's "care, comfort, maintenance and general well-being."

In the present case, the trustee was given "absolute" discretion to make disbursements to maintain appellee's "good health, safety and welfare" but *only* when "such requisites [were] not being provided by a public agency, office or department of any state or of the United States." Thus, the trust in the case *sub judice* was materially different from the trust in *Kreitzer,* as the trustee's discretion was expressly limited. Hence, the *Kreitzer* decision is factually distinguishable and, thus, not applicable to the present case.

Accordingly, the trial court did not err by reaching its decision without regard to *Kreitzer.* Appellant's second assignment of error is without merit.

Appellee has set forth two cross-assignments of error. In the first, appellee argues that the trial court erred when it ruled that she had waived one of her arguments by not raising it in front of the administrative agency. In the second cross-assignment of error, appellee argues that the trial court erred when it failed to rule that her equitable interest in the trust was not sufficient to cause the trust to be included as a countable resource. Both of these arguments seek reversal of the trial court's judgment in one aspect or another. Although designated as cross-assignments of error, they were clearly intended to function as cross-appeals. However, they were not filed in the manner required under App.R. 3(C) and, thus, are not properly before us. Pursuant to App.R. 12(A)(2), when assignments of error are not submitted in proper form, an appellate court is under no obligation to review them. Thus, we decline to review these deficiently styled cross-appeals.

Based upon the foregoing analysis, the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., and NADER, J., concur.