**METZ, Appellant,**

v.

**OHIO DEPARTMENT OF HUMAN SERVICES, Appellee.**

[Cite as *Metz v. Ohio Dept. of Human Serv.* (2001), 145 Ohio App.3d 304.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–00–048.

Decided Aug. 17, 2001.

*Craig B. Paynter* and *William J. Browning,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Patrick W. Beatty,* Assistant Attorney General, for appellee.

HANDWORK, Judge.

This case is on appeal from the November 9, 2000 judgment of the Ottawa County Court of Common Pleas, which affirmed the decision of appellee, Ohio Department of Human Services (now known as the Ohio Department of Job and Family Services). This appeal involves a review of the action of the Ottawa County Department of Human Services terminating appellant's Medicaid benefit, home and community-based waiver services, and food stamps benefit as of September 13, 1999. Upon consideration of the assignments of error, we affirm the decision of the Ottawa County Court of Common Pleas, which affirmed the

action of the agency. Appellant, Shirley Metz, asserts the following assignments of error:

*"Assignment of Error No. 1:* The common pleas court abused its discretion and committed reversible error in finding the Metz trust corpus was available to Metz where the record is void of any reliable, probative or substantial evidence upon which that factual determination could be based.

*"Assignment of Error No. 2:* The common pleas court erred as a matter of law when it concluded that the Metz trust was a countable resource for purposes of Medicaid eligibility.

*"Assignment of Error No. 3:* The common pleas court erred as a matter of law when it determined the availability of a trust corpus should be examined in light of statutes in existence at the time of the attempted termination of Medicaid benefits rather than at the time the document becomes fully funded and irrevocable.

*"Assignment of Error No. 4:* The court abused its discretion and erred as a matter of law when it determined that Metz had reapplied for benefits.

*"Assignment of Error No. 5:* The common pleas court erred as a matter of law when it failed to find the promulgation and enforcement of Ohio Adm.Code § 5101:1–39–271 as implemented violates the Ohio and federal constitutional prohibitions against retroactive, substantive laws.

*"Assignment of Error No. 6:* The common pleas court erred as a matter of law when it failed to conclude the promulgation and enforcement of Ohio Adm.Code § 5101:1–39–271 constitutes an unconstitutional delegation of legislative authority.

*"Assignment of Error No. 7:* The common pleas court erred as a matter of law when it failed to conclude that Ohio Adm.Code § 5101:1–39–271 violates the Equal Protection Clauses of the Ohio and United States Constitutions, on its face and as applied.

*"Assignment of Error No. 8:* The common pleas court erred as a matter of law when it failed to conclude that the termination of Medicaid based upon 'illusory' facts was irrational, arbitrary, and capricious, and therefore, violated Metz's rights to due process under the United States and Ohio Constitutions.

*"Assignment of Error No. 9:* The common pleas court erred as a matter of law when it failed to conclude that the use of unannounced criteria to determine eligibility issues resulted in a deprivation of Metz's rights to due process under the United States and Ohio Constitutions."

The following undisputed facts are present in this case. Appellant was born with cerebral palsy, with severe physical limitations requiring housing and care

costs averaging $6,000 each month. The major cost of her care is the need for twenty-four-hour assistance from an attendant. She has been receiving Medicaid and food stamps benefits at least since 1994.

A revocable trust agreement was established in 1985 by appellant's father. It included both a marital and family trust. When appellant's father died in 1988, the trust became irrevocable. When appellant's mother died in 1996, the funds in the marital trust transferred to the family trust. Three of appellant's siblings immediately received their distributive share. Appellant's share remained in trust for her benefit, with her heirs (which would be her siblings) as contingent beneficiaries. The trust provided that the trust income and/or principal shall be expended for appellant as the trustee, "in its sole discretion, shall determine to be necessary, with due regard to the individual need for health, education, care, maintenance and support" of appellant. The trust also contained a spendthrift provision, which provided:

"* * * Any attempt to alienate any of the remaining beneficial interests hereunder, other than the spouse's interest in Trust Number 1 as aforesaid, shall be dealt with in the following manner: If because of any alienation or attempted alienation by any beneficiary of any interest or right to receive payments under any trust hereby created, or if, from any cause whatsoever, such payments or any part thereof shall, or but for this proviso would, at any time become payable to or pass to or for the benefit of any person other than such beneficiary, then the interest in and and [sic] the right of such beneficiary to receive such payments shall cease and determine [sic] and thereafter said payments, or such part thereof as shall become so forfeited by such beneficiary, shall be applied as determined by the TRUSTEE in its uncontrolled discretion to the use of any other beneficiary or beneficiaries in such manner and portions as said TRUSTEE may deem best; provided further that notwithstanding any forfeiture of a beneficiary as aforesaid, said TRUSTEE in its uncontrolled discretion, but without any obligation so to do may from time to time apply or direct the application of said portion of such payments forfeited as aforesaid, or such much thereof as to its seems best, to the use of the beneficiary so forfeiting the same."

Appellant lived at the Luther Home of Mercy until 1994 when she secured a job. She then attempted independent living with another disabled person and received a home– and community–based waiver from the Ohio Department of Human Services. When that living arrangement failed after her mother died in 1996, appellant moved into her own home purchased with trust assets. This living arrangement improved several of appellant's health problems.

Mary Powell, the Funding Program Coordinator for the Ottawa County Board of MRDD, learned in September 1999 that appellant was receiving an on-going monthly check of $300 from the trust fund. On September 7, 1999, Powell

informed Denise Conners, Income Maintenance Worker III for appellee, that appellant was the beneficiary of a trust.

After receiving additional information, Conners sent a letter to Margaret Adams, liaison for the Department of Human Services, asking for her legal opinion. On September 10, 1999, Conners received information from Powell that appellant was receiving $300 a month from the trust for housing costs and approximately $1,000 a month for in-home companions. Because of this income, Conners immediately discontinued appellant's $10 monthly food stamps. Appellant's income was calculated to be $1,019 a month: $672 from Social Security, $300 from the trust, and $47 earned income. The standard maximum income for an individual is $893 in order to receive food stamp benefits.

Conners learned on September 17, 1999, from the trustee of appellant's trust that appellant began to receive disbursements from the trust in December 1996 and that the trust had a current value of approximately $725,000. It was later confirmed that the current value of the trust funds was $723,421. The trustee also informed Conners that appellant's home was owned by the trust. That same day, Conners discontinued the remainder of appellant's benefits because of the income from the trust and the fact that she had resources to support herself. On October 6, 1999, Conners received a letter from Adams indicating that, in her opinion, the trust was available to appellant. Appellant was informed that she was ineligible for benefits based upon Ohio Adm.Code 5101:4–4–11, which relates to eligibility for food stamps.

Appellant requested a state hearing on the matter. The state hearing officer affirmed the decision of the Ottawa County Department of Human Services on November 23, 1999, relying upon Ohio Public Assistance Manual Section 7422.54 as a basis for finding that the trust principal could be used for appellant's support needs. Appellant then sought an administrative appeal to the Director of the Ohio Department of Human Services, who also affirmed the decision of the Ottawa County Department of Human Services on December 14, 1999.

The director held that the law in effect at the time of reapplication for benefits due to the disclosure of resources must be applied to determine whether the trust is a countable resource. Furthermore, the director held that appellant had a right to demand distributions for the "health, education, care, maintenance, and support" as a primary beneficiary. The director also held that the trustee had no obligation to preserve the trust assets for the benefit of residual beneficiaries. The director relied upon Ohio Adm.Code 5101:1–39–271 and Ohio common law.

Appellant then sought an appeal to the Ottawa County Court of Common Pleas pursuant to R.C. 5101.35(E) and R.C. 119.12. The trial court also affirmed the action of the agency. The court agreed that appellant's eligibility for benefits is to be based upon the law in effect at the time Ohio Department of Human

Services initiated a reapplication process based on new information it received regarding appellant's eligibility for benefits. The court also agreed that the trust is a countable resource under current law. The court reasoned that because the trustee was obligated to expend funds for the "health, education, care, maintenance and support" of appellant, he was required to exercise his discretion to provide for her support. Therefore, appellant could maintain an action against the trustee to provide her minimal support, thereby giving her access to the trust funds. Furthermore, because of appellant's ability to maintain an action against the trustee, the court reasoned that the spendthrift provisions of the trust are not applicable. Therefore, the court held that the decision of the Ohio Department of Human Services terminating Medicaid, home– and community–based waiver services, and food stamps benefits to appellant was not unlawful, unreasonable, or against the manifest weight of the evidence. Appellant then sought an appeal to this court.

■ Our standard of review of the facts in this case is whether the trial court abused its discretion in determining that the administrative decision was supported by reliable, probative, and substantial evidence. R.C. 119.12; *Lewis v. Ohio Dept. of Human Serv.* (2000), 137 Ohio App.3d 458, 463–464, 738 N.E.2d 1264, 1267–1268; and *"The Washington D" v. Ohio Dept. of Human Serv.* (June 14, 2001), Franklin App. No. 00AP–939, unreported, 2001 WL 664401. An "abuse of discretion" is defined as a decision which is unreasonable, arbitrary, or unconscionable. *Gen. Motors Corp. v. Tracy* (1995), 73 Ohio St.3d 29, 32, 652 N.E.2d 188, 190–191.

■ In addition, an appellate court reviews questions of law and application of the law to the facts *de novo*. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835, paragraph one of the syllabus; *Lewis, supra; Moran v. Ohio Dept. of Commerce, Div. of Real Estate* (1996), 109 Ohio App.3d 494, 497, 672 N.E.2d 699, 701; *Holman v. Ohio Dept. of Human Serv.* (2001), 143 Ohio App.3d 44, 757 N.E.2d 382; and *Worthington Nursing Home v. Ohio Dept. of Human Serv.* (Mar. 7, 1995), Franklin App. No. 94APE08–1123, unreported, 1995 WL 99543.

■ In her first assignment of error, appellant argues that the trial court erred when it found that the trust corpus was available to Metz because there was no reliable, probative, or substantial evidence to support that finding.

Ohio Adm.Code 5101:1–39–271(A)(3)(a)(vii) provides that there must be only "a reasonable possibility that upon request or court action by the beneficiary, the beneficiary could gain access to the principal or payments (or increased payments) from the trust." Based upon our review of appellant's second assignment of error, we find that the determination of whether there is a reasonable

possibility of access to the trust funds is a question of law, not fact. The factual issue of the language of the trust, the grantor's intent, and the trustee's position are not at issue in this case. The only issue is whether appellant would have a reasonable possibility of forcing the trustee to pay for her minimum support needs instead of Medicaid. Therefore, we find appellant's first assignment of error not well taken.

In her second assignment of error, appellant argues that the trial court erred as a matter of law when it determined that the trust is a countable resource under Medicaid eligibility rules.

Ohio Adm. Code 5101:1–39–08, effective September 1, 1992, which defines income for Medicaid eligibility purposes, sets forth the underlying principles regarding Medicaid benefits:

"(A) * * *

"(1) Eligibility for medicaid under Title XIX is dependent in part upon the amount of income available or received by the aged, blind or disabled individual. Since the program is need-oriented, those who have substantial income cannot receive medicaid coverage even though they meet all other conditions of eligibility.

"(2) A basic tenet of public assistance is that all income must be considered in determining the need of an individual for public assistance. Potential income must be explored prior to approving medicaid. An individual who does not avail himself of a potential income is presumed to fail to do so in order to make himself eligible for public assistance. Such nonutilization of income available upon request constitutes ineligibility. * * *"

Ohio Adm. Code 5101:1–39–271(A)(2) provides:

"(2) The policy set forth in this rule applies to trusts without regard to the following:

"(a) The purpose for which the trust is established;

"(b) Whether the trustee has or exercises any discretion under the trust;

"(c) Any restrictions on when or whether distributions can be made from the trust;

"(d) Any restrictions on the use of distributions from the trust.

"(e) No clause or requirement in the trust, no matter how specifically it applies to medicaid, or other federal or state programs, precludes a trust from being considered under the policy in this rule."

Ohio Adm. Code 5101:1–39–271(A)(3) provides:

"Regardless of when it was created, a trust created for the benefit of the applicant/recipient by someone other than the applicant/recipient must be examined as a possible resource or source of income for the applicant/recipient.

"(a) The CDHS shall not automatically consider this type of trust unavailable. The CDHS shall review the trust document to determine:

"(i) Who created the trust?

"(ii) Is the applicant/recipient the trustee or beneficiary?

"(iii) If the applicant/recipient is the trustee, was the trust created with his own resources?  Can he revoke the trust even if it was not created with his own funds and use the funds for his own personal benefit?

"(iv) If the applicant/recipient is the beneficiary, does he have restricted access to the trust principal?  Is the trust revocable or irrevocable?

"(v) Is there a fixed amount of payments to the beneficiary?

"(vi) If so, what is the amount, frequency, and type of payment?

"(vii) Is there a reasonable possibility that, either upon request or court action by the beneficiary, the beneficiary could gain access to the principal or payments (or increased payments) from the trust?

"(b) From the particular combinations of factors that make up the trust, the CDHS shall determine the appropriate treatment of the trust."

■ Relying upon *Bur. of Support in the Dept. of Mental Hygiene & Correction v. Kreitzer* (1968), 16 Ohio St.2d 147, 45 O.O.2d 480, 243 N.E.2d 83, and *Martin v. Martin* (1978), 54 Ohio St.2d 101, 8 O.O.3d 106, 374 N.E.2d 1384, the trial court determined that under the terms of this trust, there is a reasonable possibility that appellant could succeed in an action against the trustee based on the theory that it is an abuse of the trustee's discretion not to expend funds for her support.  In the *Kreitzer* case, the court held that an indigent beneficiary of a trust held for "his 'care, comfort, maintenance and general well-being,' * * *may invoke the visitorial power of a court of equity to compel the fiduciary to furnish him minimal support or maintenance, notwithstanding the governing instrument commits the determination of making such payments, from the trust as are 'necessary,' to the 'sole and absolute discretion' of the fiduciary." *Id.* at paragraph two of the syllabus.

Appellant contends that the distribution language in her trust does not support a finding that this is an equivocal trust as in *Kreitzer*.  The trust in *Kreitzer* provided that the trustee was to expend funds as were "necessary" for the beneficiary's care.  Whereas, the trust in this case provided that distributions were to be made as the trustee "shall determine to be necessary, with due regard

to* * *" appellant's need for support. We find that the differences in language are not significant enough to warrant a finding that the trust in this case is purely a discretionary trust.

However, *Kreitzer* could be distinguishable on its facts for another reason. That case involved the state's seeking reimbursement from a trust that did not contain a spendthrift provision. The case before us involves the eligibility of a recipient for Medicaid benefits when she is a beneficiary of a trust that contains a valid spendthrift provision.

While *Martin* did involve a trust with a spendthrift provision, that provision stated that upon attempted alienation, the trustee could exercise its discretion to provide for the comfort, care, support, and education of the beneficiary. Therefore, the *Martin* court held that the settlor had indicated an intent that the trustee should pay any debts incurred for these purposes. Such is not the case in the trust before us. Here, the trustee is authorized to expend the trust funds with uncontrolled discretion upon alienation or attempted alienation. Thus, the *Martin* case is distinguishable on its facts.

■ Furthermore, the trial court relied upon *Miller v. Ohio Dept. of Human Serv.* (1995), 105 Ohio App.3d 539, 664 N.E.2d 619, to hold that spendthrift provisions do not defeat the beneficiary's ability to gain access to the trust corpus. We find that this case is distinguishable on its facts as well because it involved the eligibility for Medicaid benefits where the recipient was the settlor of a trust that contained a spendthrift provision. Spendthrift provisions in a self-settled trust are void because they are contrary to public policy. In the case before us, the trust is a testamentary spendthrift trust created by appellant's father, which is an enforceable trust in Ohio. *Domo v. McCarthy* (1993), 66 Ohio St.3d 312, 612 N.E.2d 706, paragraph two of the syllabus, and *Scott v. Bank One Trust Co., N.A.* (1991), 62 Ohio St.3d 39, 577 N.E.2d 1077, paragraph four of the syllabus.

Appellant asserts that this case should be governed by the holdings in *Young v. Ohio Dept. of Human Serv.* (1996), 76 Ohio St.3d 547, 668 N.E.2d 908, and *Carnahan v. Ohio Dept. of Human Serv.* (2000), 139 Ohio App.3d 214, 743 N.E.2d 473. We find that these two cases also are distinguishable on their facts. Both of these cases involve trusts that contained exclusionary language that prevented the trustee from expending any funds that would affect the beneficiary's eligibility for Medicaid benefits. The majority noted in the *Young* case that the exclusion in that case would no longer be available because of the revision to Ohio Adm.Code 5101:1–39–271(A)(2)(e), effective April 27, 1995, prohibiting such exclusion from affecting the determination of whether the trust is a countable resource. Nonetheless, the *Carnahan* court held that even Ohio Adm.Code 5101:1–39–271(A)(2)(e) did not bar the type of exclusionary language found in the

trust in that case. However, in the case before us, there is no language in the trust excluding distributions that interfere with Medicaid eligibility.

Appellant also contends that this case is similar to that of *Soc. Bank Natl. Assn. v. Cayuga Cty. Dept. of Social Serv.* (Mar. 10, 1993), Montgomery App. No. 13624, unreported, 1993 WL 65747. Once again, we disagree. In the *Cayuga* case, the settlor created a trust to pay what was necessary for the "well-being and support" of his mother and included a valid spendthrift provision. After his mother went into a nursing home, the trust was funded. The county agency sought equitable subrogation to the mother's interests in the trust to reimburse it for Medicaid monies expended on her behalf. The court held that because of the valid spendthrift provisions, the trustee had absolute discretion to make a distribution and the mother had no enforceable interest. Therefore, the equitable subrogee was the same as any other creditor. While the beneficiary had an enforceable right to enforce the support provisions, she lost that right once the spendthrift provisions were activated.

This case is distinguishable from the case before us on its facts. We are presented with a case involving eligibility for Medicaid benefits, not reimbursement. Therefore, the issue is not whether appellee can gain access to the funds as a creditor or equitable subrogee. Rather, the issue is whether appellee can deny benefits on the basis that appellant can compel the trustee to expend funds for her support. In essence, appellee's position forces appellant to do what the agency could not. However, both parties agree that there is no requirement that governmental services be provided to everyone. Had Medicaid provided services, the law is clear that the spendthrift provisions of appellant's trust would bar Medicaid from seeking reimbursement from the trust. But, since Medicaid seeks only to deny benefits, the spendthrift provision is not activated.

Therefore, even though the facts in the *Kreitzer* case are not similar, the reasoning of that case does control the outcome in this case. We conclude that there is a reasonable possibility that appellant could compel the trustee to expend funds for her support because of the language of the trust and because the spendthrift provisions are not activated by the denial of eligibility. Therefore, we hold that the trial court properly concluded that appellant is not eligible for Medicaid benefits.

Appellant's second assignment of error is not well taken.

Appellant argues in her third assignment of error that the trial court erred when it held that the law in effect at the time appellant's Medicaid eligibility was redetermined should control versus the law in effect at the time the trust became fully funded and irrevocable. Since appellee had already determined that appellant was eligible for benefits under prior law, it could not now claim that she was ineligible. Appellant cites cases holding that a trust must be interpreted based

upon the law in effect at the time it was created. However, the language in the trust before us is being interpreted based upon the holding in the *Kreitzer* case, which was decided years before the trust in this case was created. Therefore, we have not violated this principle.

The only factor that has changed since the trust became irrevocable is that the eligibility provisions for Medicaid have been revised in order to more specifically reach trust assets as countable resources. While appellant concedes that the state can eliminate Medicaid benefits, the agency cannot promulgate new requirements with retroactive implications. This issue is further developed in appellant's remaining assignments of error and will be dealt with along with those assignments of error.

Therefore, we find appellant's third assignment of error not well taken.

■    In her fourth assignment of error, appellant contends that the trial court erred by finding that this case involves a "re-application" for benefits, rather than a termination of her vested benefits. Appellee contends that even if the process was "mislabeled" as a reapplication rather than pretermination, the error was harmless.

Under former Ohio Adm. Codes 5101:1–2–10(H) and (I)(2), appellee monitors eligibility for Medicaid benefits under a reapplication process on a regular basis and upon notification of a change in circumstances that might affect eligibility. These provisions are now incorporated within Ohio Adm.Code 5101:1–38–01. The pretermination review process was recently created by the promulgation of Ohio Adm.Code 5101:1–38–011. Therefore, at the time the issues in this case arose, appellee was operating under the reapplication procedures. Therefore, we cannot find that the trial court erred by referring to this procedure. Appellant's fourth assignment of error is not well taken.

■    In her fifth assignment of error, appellant argues that the trial court erred when it failed to find that the promulgation of Ohio Adm.Code 5101:1–39–271 violated the Ohio and United States constitutional provisions against retroactive substantive law.

We disagree with appellant that the current Ohio Adm.Code 5101:1–39–271 is retroactive. This change in eligibility requirements is not being used to affect benefits appellant has already received. Instead, the provision regulates eligibility only for continuing benefits. The determination of whether the current eligibility requirements have been met is made based upon appellant's accessibility to the assets under the trust under law in effect at the time the trust became irrevocable. Therefore, there is no constitutional violation of provisions against retroactive laws. Appellant's fifth assignment of error is not well taken.

■ In her sixth assignment of error, appellant argues that the trial court erred when it failed to hold that R.C. 5111.01 and R.C. 5111.011 are unconstitutional delegations of legislative authority to the Ohio Department of Human Services. As a result, she contends, the agency promulgated Ohio Adm.Code 5101:1–39–271 without proper guidance regarding eligibility criteria.

Ohio's Medicaid program must comply with both Title XIX of the "Social Security Act," 49 Stat. 620 (1935), Section 301, Title 42 U.S. Code, as amended, and the requirements of the Secretary of Health and Human Services. R.C. 5111.01; R.C. 5111.011(B); and *Martin v. Ohio Dept. of Human Serv.* (1998), 130 Ohio App.3d 512, 515–516, 720 N.E.2d 576, 578–579, citing *Schweiker v. Gray Panthers* (1981), 453 U.S. 34, 36–37, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460, 465–466. Clearly, R.C. 5111.01 and 5111.011 are not unconstitutional delegations of legislative power. The General Assembly has indicated that the administrative agency is to promulgate rules in accordance with federal law.

Appellant contends that because Section 1396p(d), Title 42, U.S. Code counts only self-settled trusts as a resource under certain circumstances, the Ohio Department of Human Services could not promulgate a rule that included non-self settled trusts as a countable resource under similar circumstances. We need not address this issue, however, since the issue raised in the assignment of error is solely whether there was an unconstitutional delegation of legislative authority and not whether the agency exceeded its authority.

Accordingly, appellant's sixth assignment of error is not well taken.

■ In his seventh assignment of error, appellant argues that the trial court erred when it failed to hold that Ohio Adm.Code 5101:1–39–271 is unconstitutional on its face and as applied, because it violates the Equal Protection Clauses of both the Ohio and United States Constitutions.

■ The Equal Protection Clauses of both the Ohio and United States Constitutions protect similarly situated people from being treated differently by the government. *State ex rel. Riter v. Indus. Comm.* (2001), 91 Ohio St.3d 89, 93, 742 N.E.2d 615, 618. The Ohio Adm. Code in this case does not treat similarly situated people differently on its face. Anyone who applies for Medicaid benefits and is the beneficiary of a trust which they could access for their support must include the trust as a countable resource in determining their eligibility to receive benefits.

Appellant's identification of the class is not clear. It appears that she identifies the class as everyone who is a trust beneficiary under a spendthrift trust and then notes the different treatment they receive based upon whether or not the person is applying for Medicaid benefits. However, as we noted above, eligibility to receive Medicaid benefits and the ability of the state to seek reimbursement

for benefits previously provided are two different issues. Furthermore, appellant has failed to present any evidence that a similarly situated person has been treated differently than herself under this rule.

Accordingly, appellant's seventh assignment of error is not well taken.

In her eighth assignment of error, appellant argues that the trial court erred when it failed to hold that the termination of her Medicaid benefits was irrational, arbitrary, and capricious, and thereby denied her right to due process under both the Ohio and United States Constitutions. This assignment of error is found not well taken because we have already determined under appellant's second assignment of error that the trial court properly held that the trust was a countable resource under the agency's rules and common-law precedent.

In her ninth assignment of error, appellant argues that the trial court erred by not holding that the agency violated her due process rights under the Ohio and United States Constitutions when it terminated her Medicaid benefits without identifying the basis for the termination. As a result, appellant asserts that she was unable to present her case effectively in the administrative hearing process.

While we agree with appellant that each level of the administrative process identified a different Ohio Administrative Code upon which it was relying, we find that she was not denied the opportunity to fully litigate the issues. On appeal, appellant has failed to identify any issue that was not fully addressed below. The central issue in this case is whether appellant was no longer eligible to receive benefits because she had trust assets that she could compel to be used for her support needs. We have determined that the trial court and appellee properly determined this issue. Therefore, appellant's ninth assignment of error is not well taken.

Having found that the trial court did not commit error prejudicial to appellant, the judgment of the Ottawa County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the court costs incurred on appeal.

*Judgment affirmed.*

MARK L. PIETRYKOWSKI, P.J., and RICHARD W. KNEPPER, J., concur.