James Bruce TIDROW,
Petitioner-Appellant,

v.

DIRECTOR, MISSOURI STATE DIVISION OF FAMILY SERVICES,
Respondent-Respondent.

No. 48250.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 22, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 26, 1985.

Application to Transfer Denied
April 30, 1985.

Ramon J. Morganstern, Michael J. Mc-Kitrick, Barbara Blee Maille, Clayton, for petitioner-appellant.

Paul T. Keller, Public Counsel, Jefferson City, for respondent-respondent.

STEPHAN, Judge.

James Bruce Tidrow appeals from a judgment of the Circuit Court of St. Louis County affirming a determination by the Director of the Division of Family Services that he is not entitled to medical assistance to pay the costs of residential care as provided by § 208.151, RSMo.[1] The Director's rejection of appellant's application for assistance is based on the Director's finding that "claimant has resources in excess of the maximum allowed." As developed at a hearing conducted by a hearing officer appointed by the Director, appellant is the primary beneficiary of a spendthrift, discretionary trust created by his father's will. The assets of the trust, consisting mainly of a residence and proceeds of life insurance policies, were valued at approximately $175,000. Imputing the value of the trust assets to appellant, the Director denied benefits to appellant on the authority of § 208.010–2 (4) which prohibits such payments to anyone who owns cash or securities in the amount of $1000 or more and (5) which prohibits payments to anyone who is the record or beneficial owner of any kind of property of a value in excess of $20,500. For reasons hereinafter set forth, we believe that it was error to impute the value of the trust assets to the appellant. Accordingly, we reverse and remand to the Circuit Court to remand to the Director for a redetermination of the issues, as provided by § 208.100, RSMo Cum.Supp.1981 and § 208.110, RSMo 1978.

Appellant, known as "Bruce" Tidrow, was 34 years of age at the time of the hearing. He has been severely mentally retarded since birth, has an IQ of 29 and a mental age of five years, one month. Appellant was cared for at home until appellant's mother became critically ill. In early May of 1980, appellant's father, Earl Ti-drow, contacted the Family Service Center for emergency respite day care for Bruce. Mr. Tidrow was referred to the Missouri Department of Mental Health Regional Center, where he applied for and received financial assistance. At that time the cost of day care for five days a week was $559.36 per month. The Department of Mental Health also paid for adult developmental classes at the St. Louis Association for Retarded Citizens.

Appellant's mother died in July, 1980. Several weeks later Earl Tidrow applied for future residential services for his son Bruce, which at that time cost $1234.00 per month. At the time of the hearing, the cost of such care had increased to approximately $2,200 per month. Mr. Tidrow was aware that funds were generally available for financial assistance of residential-type programs and that Bruce would have to be institutionalized for as long as he lived. A week after this initial application, Earl Tidrow executed his last will and testament, leaving the bulk of his estate in a discretionary, spendthrift trust for the benefit of his son, Bruce, and secondarily for the benefit of his other son, Kim, with the remainder to go to Kim free of trust upon Bruce's death.

Earl Tidrow was hospitalized in June, 1981, and died on July 3, 1981. Bruce was considered for immediate placement in the residential program and, after a two-week trial period, was accepted into the program. Medical assistance was applied for on Bruce's behalf on August 1, 1981. An attorney in the office of the general counsel of the Department of Social Services gave an opinion that the assets of the trust were "available" to Bruce, and the application was denied by the Division of Family Services on October 6, 1981.

Appellant contends that the trial court erred in affirming the decision of the Missouri State Division of Family Services because appellant's interest in the trust is not an "available resource," and thus the deci-

---

1. Except as otherwise noted, references herein to §§ 208.151 and 208.010 are to legislation which became effective Feb. 16, 1982, the date of the Director's hearing.

sion of the Director of the Missouri State Division of Family Services was arbitrary and capricious, not supported by substantial and competent evidence, or authorized by law.

The trust here in question is a "true spendthrift trust" as described in *McNeal v. Bonnel*, 412 S.W.2d 167, 170 (Mo.1967) in that it expressly provides that no beneficiary may alienate his interest therein and that no creditor of a beneficiary may reach such interest in satisfaction of any claim against a beneficiary. In the words of the instrument:

> Neither the principal nor the income of the trust estate created herein shall be liable for the debts of any beneficiary hereof, nor shall the same be subject to seizure by any creditor of any beneficiary under any writ or proceeding at law or in equity, and no beneficiary shall have any power to sell, assign, transfer, encumber or in any other manner to anticipate or dispose of his or her interest in the trust estate or the income produced thereby.

Similarly, the trust is wholly discretionary in that it authorizes, but does not require, the trustee [2] to pay from interest or principal any amount the trustee deems necessary, in its discretion, to provide for Bruce's "reasonable comfort" during his life.[3] The trustee is also authorized to pay to Bruce's younger brother, Kim, such amounts as may be warranted by his needs or by a "medical or family emergency," subject to the trustee's determination that Bruce's welfare would not be jeopardized. Upon Bruce's death, the trustee is directed to pay the trust estate, free of trust, to Kim, if living, or to his descendants. The trust does not require the payment of any set amount of principal or interest at any time to any beneficiary; any interest not paid out is to be turned into principal.

The respondent Director candidly concedes in his brief that, if Earl Tidrow were living, his net worth would not disqualify his adult retarded son from receiving the medical assistance benefits here in issue. This is consistent with § 208.010-3 which provides:

> In determining eligibility and the amount of benefits to be granted under federally aided programs, the income and resources of a relative living in the home shall be taken into account only to the extent the income, resources, support and maintenance are available for the support of the claimant unless the relative is the claimant's spouse or minor child living in the home, or is the parent of a minor child for whom benefits are claimed.[4]

---

**2.** St. Louis County Bank and Bruce's younger brother, Kim Tidrow, are co-trustees. Kim, however, may not participate in any decision to pay out interest or principal to himself. For the sake of convenience, the co-trustees will be referred to as "trustee".

**3.** The language of the trust is:

> During the lifetime of my said son, [Bruce], the Trustee shall use and apply *so much* of the net income and principal of the trust estate *as the Trustee may*, in the Trustee's discretion, *deem necessary* for the health, maintenance and support in reasonable comfort of such child, any net income not so used shall be accumulated and, at least annually, added to income. (Emphasis added.)

The foregoing may be contrasted ·with the following language in a testamentary trust construed in *Winkel v. Streicher*, 365 Mo. 1170, 295 S.W.2d 56, 59 (banc 1956) to mean that *all* income from the corpus was to be paid for the support of the beneficiary, but that payments out of principal were at the discretion of the trustee:

> The trustee shall pay the net income and any part of the corpus of the estate, as he in his sole discretion deems necessary, to my niece, Lillie Streicher or her guardian or to any person or corporation caring for her, for the support and maintenance of my said niece.

The court stated in *Winkel* that, in order to hold that payment of the interest was discretionary with the trustee, "it is necessary to transpose the words 'any part of' so that the sentence would read: 'The trustee shall pay *any part of* the net income and the corpus of the estate etc.'" So it is in the instant case; payments from both interest and principal are matters within the discretion of the trustee.

**4.** Exclusion from the determination of any consideration of the resources of a parent of a claimant who is over the age of twenty-one may be looked on as a statutory exception to the common law rule recognized in the State of Missouri that a parent's obligation of support does not terminate when his child reaches twen-

■ Against such factual and statutory backdrop we pursue our basic task of determining whether the Director's conclusion that the assets of the trust are "available" to Bruce is legally tenable. See *Pummill v. Missouri Division of Family Services*, 674 S.W.2d 647, 648 (Mo.App. 1984). Our determination turns on whether such conclusion is reasonably consistent with the settlor's intent in creating the trust. Almost a century ago, our Supreme Court said:

In construing wills, the familiar rule prevails that they are to be construed as a whole; liberally construed; construed with reference to the intention of the testator; and unless that intention, if carried out, will violate some positive rule of law, or subvert some rule of public policy, such intention must be allowed to control, and be effectuated by the courts. And, in construing wills which create trusts, the same liberality of construction as to such trusts prevails.

*Partridge v. Cavender*, 96 Mo. 452, 9 S.W. 785, 786 (1888). The concept that the intention of the settlor is the key to the construction of a trust and that the intention will be effectuated unless contrary to law or public policy continues to prevail. See *Webb v. St. Louis County National Bank*, 551 S.W.2d 869, 875 (Mo.App.1977); *First National Bank of Kansas City v. Waldron*, 406 S.W.2d 56, 58 (Mo.1966); and *First National Bank of Kansas City v. Hyde*, 363 S.W.2d 647, 652 (Mo.1962), where the court said, "In determining the meaning of a trust provision, the paramount rule of construction is that the settlor's intent is controlling and such intention must be ascertained primarily from the trust instrument as a whole."

■ From the instrument involved here, it is abundantly clear that Bruce's father intended that payments from the trust to

or for Bruce were to supplement, rather than supplant, the benefits to which Bruce would otherwise be entitled. As indicated above, the Director has conceded that, if Earl Tidrow were alive, he would not have to deplete all of his assets before Bruce could qualify for benefits from the State. Thus, the conclusion is compelling that the father intended his trust estate, the existence of which was triggered by his death, to do for Bruce what his father did for him in life: to supplement the benefits received from the State. Earl Tidrow was obviously aware that Bruce's age and good physical health augured a long life expectancy for him, that Bruce will need custodial care for as long as he lives, and that the cost of such care was increasing. In view of such facts, it would not comport with common sense to have created a gift of total support which would be wholly dissipated in a matter of a few years. On the contrary, the repeated references in the trust to Bruce's "lifetime" and "for so long as [Bruce] may live," as well as the provision that, upon Bruce's death, the remaining assets would be paid to Kim or his descendants argue forcefully for the conclusion that settlor's intent was that the trust would continue throughout Bruce's life and that it would be supplementary to support received from the State. A contrary conclusion would totally frustrate the settlor's intent that his other son Kim would, at least ultimately, derive benefits from the settlor's estate. It would also invite anyone, finding himself in the position of Earl Tidrow in the future, to make no testamentary provision for a handicapped child in the hope that the largesse of others benefitted by his will would provide "extras" for his disabled offspring.

In justification of his denial of benefits to Bruce, the Director cites § 208.010–2(5) which states that benefits are not payable

ty-one "where the adult child is unmarried, unemancipated and insolvent and physically or mentally incapacitated from supporting himself." *Lieberman v. Lieberman*, 517 S.W.2d 478, 480 (Mo.App.1974). Such exception is necessitated by the prohibition against State established standards in federally aided programs

which "take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 ..." 42 USCA § 1396a(17)(D).

to one who, "owns or possesses property of any kind or character, or has an interest in property, of which he is the record or beneficial owner, the value of such property, as determined by the division of family services, less encumbrances of record, exceeds twenty thousand five hundred dollars." The Director argues that, as a beneficiary of his father's trust, Bruce is a beneficial owner of the trust assets and is ineligible for benefits by reason of the value of the assets.

The statute need not, and for reasons hereinafter stated, should not be so narrowly interpreted. Section 208.010–1 opens with the following provision:

> In determining the eligibility of a claimant for public assistance under this law, it shall be the duty of the division of family services to consider and take into account all facts and circumstances surrounding the claimant, including his living conditions, earning capacity, income and resources, from whatever source *received* ... (Emphasis added.)

Although the trust authorizes, and indeed contemplates, the bestowal of benefits upon Bruce, it does not mandate payments. Thus, at any given time, Bruce may or may not have in his possession anything "received" from the trust and nothing had been received at the time this application for benefits was made. As discussed above, the trust is spendthrift and payments from interest and principal are matters within the discretion of the trustee. Granted that the total refusal of the trustee to make any payments from interest or principal might, under some circumstances, constitute an abuse of the trustee's discretion as conflicting with the settlor's intent; similarly the Director's determination that the total assets of the trust are presently available to Bruce is in conflict with the clear intent that the trust would last for the duration of Bruce's life and beyond.

Title 42, § 1396a (17)(B) provides that a State plan for medical assistance, such as that set out in § 208.010, RSMo, et seq., must "provide for taking into account *only* such income and resources as are, as deter-

mined in accordance with standards prescribed by the Secretary, *available* to the applicant ..." (Emphasis added.) Any effort by a State to impose a more restrictive standard of eligibility is invalid under the Supremacy Clause of the United States Constitution, unless "clearly authorized by the language of the [Social Security] Act or its legislative history." *Lewis v. Shulimson*, 400 F.Supp. 807, 809–810 (U.S.D.C., E.D.Mo., 1975), citing *Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); and *Carleson v. Remillard*, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972).

Part of the "legislative history" of the Act, and particularly subsection (17), was cited by the Supreme Court of the United States in *Schweiker v. Gray Panthers*, 453 U.S. 34, 45, 101 S.Ct. 2633, 2641, 69 L.Ed.2d 460, 471 (1981) when it quoted the leader of "the Senate's conference delegation," summarizing the effect of subsection (17), "No income can be imputed to an individual unless actually available ..." 111 Cong. Rec. 18350 (1965). Furthermore, with respect to the term "available resources," the "standards prescribed by the Secretary" include the following, "resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance." 45 C.F.R. § 233.20 (a)(3)(D).

In view of the fact that the Secretary's definition of "available" is entitled not only to deference, but to "legislative effect" in matters of this nature, *Schweiker*, supra, 453 U.S. at 44, 101 S.Ct. at 2640, 69 L.Ed.2d at 470, we conclude that the Director's determination that the total assets of the trust are immediately available to Bruce is unauthorized by law. We need not, at this juncture, plumb the difference between the term "legal interest" in the regulation and the apparently broader scope of the term "beneficial owner" in § 208.010–2(5), or the effect of that difference on the validity of the statute under the Supremacy Clause. We do hold, however, that Bruce does not,

at this time; have "the legal ability to make [the total assets of the trust] available for support and maintenance." This, for the reason that no abuse of the trustee's discretion to withhold payment has been shown on this record. As discussed above, it is our view that the settlor's intent was to provide lifetime supplementary support and assistance for Bruce and that intent cannot be fulfilled by making the income and principal of the trust immediately and completely available for the full cost of his support. Accord, *Zeoli v. Commissioner of Social Services*, 179 Conn. 83, 425 A.2d 553 (1979). See also, *Oddo v. Blum*, 83 A.D.2d 868, 442 N.Y.S.2d 23 (1981).

Finally, we distinguish the instant case from *Estate of Janet Wallace v. Director, Missouri State Division of Family Services*, 628 S.W.2d 388 (Mo.App.1982) upon which respondent places great reliance. In that case, it was held that the beneficiary of a trust was properly denied medical assistance under Chapter 208, RSMo, because the assets of the trust approximated $37,000 at the time of the Director's hearing. The decisive difference between that case and the one at hand is that the claimant was not only the beneficiary of the trust but the grantor and co-trustee. The trustee was required to pay the income from the trust to the claimant, as well as any amount of principal which the claimant requested in writing. Furthermore, the trust specifically authorized the trustee to withhold any benefits to the extent that they were available from public funds; and, on appeal, the claimant's principal argument was that she "had no right to support from the trust to the extent that benefits were available from the Division." *Id.* at 389.

Disposition of the *Wallace* case was consistent with the version of § 208.010–2(1)(a) in effect at the time. The cited provision barred payment of any benefits to any person who "within five years preceeding the date of the investigation" transferred anything of value to another "without receiving fair and valuable consideration." Other provisions made the disqualification co-extensive with the value of the thing transferred. In short, the public policy of this

State as articulated by the cited statute and the *Wallace* case is that a person may not, by voluntary divestiture of his assets, deplete his resources in order to qualify for public assistance.

Our disposition of this case does no violence to that public policy. We merely re-assert the rule of *First National Bank of Kansas City v. Hyde*, supra, that "the paramount rule of construction is that the settlor's intent is controlling," and where, as here, that intent is determinable, the court will see to its effectuation. To affirm outright the determination of the Director that the assets of the trust are immediately available to the appellant would authorize the rapid and total dissipation of the trust estate. Such disposition would be wholly contrary to the clear intent of the settlor that, barring unforeseen events requiring unusually large expenditures, the trust would provide supplementary benefits for Bruce throughout his lifetime and, thereafter, the trust assets would be paid to Bruce's younger brother.

Accordingly, we reverse and remand to the Circuit Court with directions to remand the matter to the Director for reconsideration of his decision, as provided by § 208.100–5, RSMo 1983. Such reconsideration may take into account what part, if any, of the cost of services required by appellant should be paid by him, giving full regard to the terms of the trust and the intent of the settlor, as discussed herein. With respect to the cost of ordinary medical and custodial care required by appellant, such reconsideration by the Director shall be based upon a threshhold determination of what portion of the interest income of the trust estate is "actually available" to the appellant: that is to say, not more than the maximum amount which can be paid from income without subjecting fulfillment of the settlor's intent to unreasonable risk. An opportunity to be heard on this issue should be extended by the Director to the corporate trustee as well as to Kim Tidrow as co-trustee and secondary beneficiary.

SIMON, P.J., and STEWART, J., concur.