**In re the Matter of: BRUCE G. ROBERT QTIP MARITAL TRUST, Respondent,**

v.

**Joan M. GRASSO, Appellant.**

**No. ED 93836.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 28, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 8, 2011.

Application for Transfer Denied March 29, 2011.

Michael T. George, The Law Firm of Michael T. George, P.C., St. Louis, MO, for Appellants.

Patricia D. Gray, Gray and Hoffman, P.C., Robert J. Selsor, Polsinelli Shughart, P.C., W. David Wells, Thompson Coburn

LLP, Thomas H. Mug, Gallop, Johnson & Neuman, LC, David D. Crane, Husch Blackwell Sanders LLP, Joel Weeks, Lewis, Rice & Fingersh, St. Louis, MO, for Respondents.

KURT S. ODENWALD, Presiding Judge.

### Introduction

Joan M. Grasso (Grasso) appeals from the trial court's Order and Judgment granting the motion for summary judgment filed by the petitioners in a probate action and simultaneously denying Grasso's motion for summary judgment regarding the proposed distribution of assets from a trust formed by her deceased father as part of his estate planning. The trial court's Order and Judgment allowed the cash distribution from the Trust to Grasso to be offset by Grasso's indebtedness by promissory note to the Trust. Grasso claims that the spendthrift provisions of the Trust and the non-recourse provisions of the promissory note precluded any offset. Because the Trust provisions mandating an equal distribution of assets supersedes the separate spendthrift provision of the Trust or the terms of the promissory note, we affirm the trial court's Order and Judgment allowing the distribution of Trust assets with the corresponding offset of Grasso's promissory note indebtedness.

### Background

Bruce G. Robert (Mr. Robert) died on September 24, 1996. Under his Last Will and Testament, Mr. Robert created a QTIP Marital Trust (the Trust) naming his wife, Mary A. Robert (Mrs. Robert) as the lifetime beneficiary, and their ten children as the remainder beneficiaries. The assets of the Trust consisted primarily of shares of common stock of Siegel–Robert, Inc. (the Company), a company founded by Mr. Robert. The terms of the Trust provided that upon the death of Mr. Robert, his "primary intention is to preserve [his] estate for the benefit of [his] Wife and descendants." Accordingly, upon his wife's death, "all remaining unappointed property of the Marital Trust shall be divided and distributed in the manner set forth in Section 4.02(b)." Section 4.02(b) provides that all remaining property (including lapsed legacies) shall be distributed to the children of Mr. Robert "in equal shares."

Section 5.01(f) of the Trust gives the trustees "full power and authority":

> To adopt such method as the Trustees may deem equitable for the allocation of property or undivided interest therein among the various trusts created herein and other recipients hereunder, and to make such division or distribution in money, in kind, or partly in money and partly in kind; and to determine for the purpose of such division or distribution the value of any securities or other property of the trust estates, ... and to select the date for such valuation as may be deemed most appropriate by the Trustees....

This section also states that "all decisions of the Trustees made in good faith shall be conclusive and binding upon all parties in interest."

Section 5.02 of the Trust additionally authorizes the Trustee to do anything the Testator could do as owner of the capital stock, with one exception. The Trustee's authority to sell any shares of the Company stock was subject to the right of first refusal of Mr. Robert's children to purchase the stock for the same price and under the same terms as offered by any third party. This right of first refusal to purchase the Company stock from the Trust belonged equally to all of Mr. Robert's children.

Finally relevant to this appeal, the Trust contains a spendthrift provision set forth in Section 5.03. This provision states:

No beneficiary of any trust under this instrument shall have the power to assign, convey, alienate, or otherwise encumber any interest acquired in the income or principal of any such trust estate hereunder, nor shall such income or the principal or any interest of any beneficiary hereunder be liable for any debt incurred by such beneficiary, nor shall the principal or income of any trust estate shall be subject to seizure by any creditor of any beneficiary under any writ or proceeding in law or in equity, until such income or principal shall have been actually paid over and delivered to the beneficiary.

In May 1998, the Trust contained assets including more than 7.4 million shares of the Company stock. On May 29, 1998, Mrs. Robert, as Trustee of the Trust, sold 180,000 shares of the Company stock from the Trust to each of the ten children. The children paid for the shares by executing ten separate and identical Non–Recourse Promissory Notes (Notes), each in the amount of $3,911,400. The Notes named each of the ten children as Makers and the Trust as Payee. The Notes provided for fixed annual payments to the Trust by the children and permitted prepayment without penalty. As security for the Non–Recourse Promissory Notes, Mrs. Robert, as Trustee, entered into ten separate identical Stock Pledge Agreements, one with each beneficiary. The Pledge Agreements provided that the shares purchased by the children would be delivered to and held as security by the Trustee, until the children made full and final payment of their obligations under the Non–Recourse Promissory Notes. In conjunction with the sales of shares, the ten children, Mrs. Robert as Trustee, and the Company also entered into separate Stock Redemption Agreements. Under these agreements, if a maker of a Note failed to make the required payment when due under the Promissory Note, the Company would redeem a sufficient number of that maker's shares of the Company's common stock to make the required annual payment and deliver the proceeds of the redemption to the Trustee.

While the Non–Recourse Promissory Notes were outstanding, beneficiary Bruce P. Robert made the required payments when due each year. On May 31, 2003, he also prepaid $1,111,400 of the principal obligation on his Note. Other beneficiaries failed to make some of the required annual payments on the Notes, thereby causing portions of their stock in the Company to be redeemed during some years. Grasso made no payments to the Trust under her Note. Accordingly, under the Stock Redemption Agreement, a portion of Grasso's stock in the Company was redeemed every year to satisfy her payment obligations to the Trust.

In November 2003, Mrs. Robert as Trustee offered to renegotiate the terms of the Non–Recourse Promissory Notes with the ten children. The modification of the Notes reduced the interest rate on the unpaid balance of each Note. Nine of the children renegotiated his or her Note; however, Grasso failed or refused to do so.

Mrs. Robert resigned as Trustee in September 2004, at which time daughters Linda Robert Honigfort and Janet Robert became successor co-Trustees of the Trust and served as such until June 27, 2008.

When Mrs. Robert died on November 22, 2007, none of the Notes were in default. The amount owed by each beneficiary on the Notes and the number of shares of the Company stock redeemed under the Pledge Agreements differed for each beneficiary. Grasso had the largest outstand-

ing balance of her Note, owing a total of $2,685,629.61. The Trust held 9,664 of Grasso's Company shares as security for payment of her obligations under the Note. The balance of Grasso's 180,000 shares had been redeemed to pay her Note obligations under the Stock Redemption Agreement. Eight of the children carried an outstanding balance on their Notes of $2,567,289.75. The Trust held varying amounts of their Company stock held as security, ranging from more than 21,000 shares to 180,000 shares. After prepaying much of the principal due on his Note, Bruce P. Robert carried the lowest outstanding balance, totaling $1,837,810.55. The Trust held 180,000 shares of Bruce Robert's Company stock as security for his obligation under his Note.

On January 22, 2008, in partial termination of the Trust, co-Trustees Honigfort and Robert proposed a distribution from the Trust to each beneficiary. The proposed distribution to each beneficiary included the Note made by that beneficiary, a release of the security interest held by the Trust in the associated collateral, and the distribution of cash that would take into account the outstanding indebtedness of each beneficiary to the Trust as of the date of Mrs. Robert's death. The Trustees' proposed distribution of each Note at the amount of the outstanding indebtedness, rather than at the Note's market value, recognized the lien the Trustees had on future distributions from the Trust to secure repayment of the loan. The Trustees' proposed offset of the cash distributions by the amount of the beneficiary's individual indebtedness to the Trust ensured that each beneficiary received an equal share of the trust assets.

In proposing this distribution of Trust assets, the Trustees relied on Section 456.8.816(18), RSMo [1], which provides that

a trustee may "make loans out of trust property, including loans to a beneficiary on terms and conditions the trustee considers to be fair and reasonable under the circumstances, and the trustee has a lien on future distributions for repayment of those loans." Because the outstanding obligations on the Note differed among the beneficiaries, the amount of the proposed cash distributions from the Trust varied greatly. For example, because Grasso had made no payments on her Note and did not renegotiate the interest rate of her Note, the outstanding balance due under Grasso's Note was greater than the outstanding balances owed by her siblings on their Notes. In order to equalize the distribution of Trust assets to all of the beneficiaries, the Trustees proposed that Grasso receive no cash distribution from the Trust. Nine of the beneficiaries consented to this distribution. Grasso objected.

On February 28, 2008, the Trustees distributed to each beneficiary his or her Note and released the Trustees' security interest in each beneficiary's shares of the Company. On June 26, 2008, the Trustees filed a Petition for Instructions with the probate court seeking directions regarding the propriety of making the equalizing distributions of cash from the Trust assets. The co-Trustees later resigned and Commerce Bank, N.A. (Commerce) and Northern Trust Bank, F.S.B. (Northern) (collectively, Trustees) were substituted as Trustees in the First Amended Petition.

On September 2, 2008, the nine children (Nine Siblings) who consented to the proposed distribution by the Trustees filed a motion for summary judgment in support of the Trustees' petition. On November 3, 2008, Grasso filed her cross motion for summary judgment seeking denial of the

---

1. All subsequent statutory citations are to RSMo 2006, unless otherwise indicated.

Trustees' plan of distribution. On September 18, 2009, the trial court granted the Nine Siblings' motion for summary judgment and denied Grasso's cross motion for summary judgment. The trial court authorized the Trustees to make the equalizing cash adjustments proposed by the Trustees in the letter to the beneficiaries dated January 22, 2008, "in order to equalize the distributions to beneficiaries" of the Trust.

On October 16, 2009, Grasso filed a motion asking the court to reconsider its order and clarify, change or supplement it. The trial court denied Grasso's motion and issued a Memorandum Opinion, Order and Judgment on January 13, 2010. The trial court's analysis was guided by Section 4.02(b) of the Trust, which mandated the trust be distributed "in equal shares." The trial court analogized the case to one applying the intestate rule of "hotchpot" because that principle of "blending and mixing of property belonging to different persons in order to divide it equally," would effectuate the result dictated by the language employed by Mr. Robert in Section 4.02(b). The trial court found that the delivery of stock to the beneficiaries was an advancement for which each beneficiary delivered a binding Note in equal amounts. The trial court concluded that the Notes merely replaced the stock as assets of the Trust to which the beneficiaries were otherwise entitled. As the beneficiaries paid varying amounts of cash on their obligations under the Note, or funded payments of their Note obligations by surrendering their stock, the values of each Note varied. Given the different values of the Note, the trial court applied the doctrine of retainer embodied in Section 456.8–816 in order to achieve equality in the distribution of the Trust assets among the beneficiaries. Accordingly, the trial court found that those beneficiaries who contributed more cash to the Trust were entitled to receive a greater distribution from the Trust, and those beneficiaries who paid less to the Trust under their Notes would receive a lesser cash distribution because the values of their Notes were higher.

Grasso asserts that the spendthrift clause in the Trust superseded or nullified the right of the Trustee to retainer for advancements taken by her or any beneficiary from the Trust, and precluded the proposed distribution with offsetting adjustments. The trial court disagreed, but noted, that if Grasso's suggestion that the sale of the Company stock in consideration for the non-recourse notes was contrary to the purpose and intent of the dispositive provisions of Section 4.02(b), her remedy was an action against the Trustee for breach of trust with respect to the propriety, purposes and consequences of participation in the transaction itself.

Grasso filed her Notice of Appeal with this Court on October 27, 2009. This appeal follows.

### Points on Appeal

Grasso raises two points on appeal. In her first point, she alleges that the trial court erred in granting summary judgment in favor of the Nine Siblings and finding as a matter of law that the Trustees may make an offset against Grasso's share of the Trust assets for her obligation under the Note collateralized by her Siegel–Robert stock. Grasso argues that allowing the offset and adjustment of the cash distribution to which she is entitled from the Trust wholly ignores and violates the spendthrift clause of the Trust and the non-recourse nature of the Note.

Second, Grasso argues that the trial court erred in granting summary judgment in favor of the Nine Siblings and authorizing the Trustees to make the proposed cash adjustments because there ex-

ists a genuine issue of material fact concerning the value of the Notes and the amount of cash payment necessary to equalize the beneficiaries' positions.

### Standard of Review

The standard of review for an appeal from summary judgment is essentially *de novo. ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment will be upheld on appeal if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Id.* This Court may affirm the trial court's judgment as long as the judgment can be sustained under any legal theory that is reasonably consistent with the pleadings. *Smith v. Square One Realty Co.*, 92 S.W.3d 315, 317 (Mo.App. E.D.2002).

### Discussion

**I. The Testator's express intent to distribute the Trust assets equally to the beneficiaries is controlling.**

In her first point, Grasso argues that the trial court erred in granting summary judgment in favor of the Nine Siblings because the distribution authorized by the court ignores the spendthrift clause and the non-recourse nature of the promissory note. Recognizing the paucity of judicial decisions supporting her argument, Grasso openly invites this Court to "fashion a just remedy and make new law" to correspond with Mr. Robert's intention as set forth in his Last Will and Testament. Ancillary to her invitation, Grasso suggests that this Court somehow revert to the holding in *Bixby v. St. Louis Union Company*, 323 Mo. 1014, 22 S.W.2d 813 (1929), a case overruled almost 40 years later by *Moffat v. Lynch*, 642 S.W.2d 624 (Mo. banc 1983). We decline Grasso's invitation to go "back to the future," and hold that a "just reme-dy" presently exists in the trial court's judgment which reflects current law.

#### A. Intent of the Testator

Grasso reminds this Court, and we agree, that trusts are construed as a whole and the testator's intent controls. *Tidrow v. Dir. Mo. State Div. of Family Servs.*, 688 S.W.2d 9, 12 (Mo.App. E.D. 1985).

> In construing wills, the familiar rule prevails that they are to be construed as a whole; liberally construed; construed with reference to the intention of the testator; and unless that intention, if carried out, will violate some positive rule of law, or subvert some rule of public policy, such intention must be allowed to control, and be effectuated by the courts. And, in construing wills which create trusts, the same liberality of construction as to such trusts prevails.

*Id.*, quoting *Partridge v. Cavender*, 96 Mo. 452, 9 S.W. 785, 786 (1888).

Here, the terms of the Trust clearly indicate that Mr. Robert's primary intention first was to benefit his wife, and then, following his wife's death, to benefit his ten children "equally." Having determined this to be Mr. Robert's primary intent, when we view the Trust as a whole, we find no genuine dispute of material fact that the proposed distribution fully complies with the requirements of the Trust, and that the Nine Siblings are entitled to judgment as a matter of law. The distribution as proposed by the Trustees treats Mr. Robert's children "equally" and does not violate other rules of law or public policy.

Grasso and the Nine Siblings agree that Mr. Robert's intention was to treat the ten children equally. Grasso suggests, however, that the stock transaction as structured for each child guaranteed future inequities

among the children. Grasso also argues that the transfer of the Company stock by the Trustee ran counter to Mr. Robert's intent to forbid "the premature distribution and dissipation" of the Company stock. We are not persuaded by Grasso's argument because Section 5.02 of the Last Will and Testament expressly provides for the sale of the Company's stock to his children as "optionsholders" with a right of first refusal. The record further shows that the stock transaction was offered *equally* to each of the ten children, who were free to accept or reject the offer of the Trust to sell them the Company stock on the terms presented. Any subsequent disproportionate holdings of the Company stock among the children resulted from each child's individual decisions and actions following the sale of the Company stock from the Trust to them. In determining whether the Trust honored the intent of the testator to treat each beneficiary equally, we look at the distribution of the assets of the estate rather than how each beneficiary used his or her investments. Accordingly, we hold that offsetting the cash distribution from the Trust by the amount of the outstanding indebtedness owed by each child provided equal treatment to the ten children, consistent with Mr. Robert's expressed intention.

We note further that the Trust provides the Trustee with substantial discretionary authority regarding the distribution of Trust assets. Section 5.01(f) of the Trust allows the Trustees "to adopt such method as the Trustees may deem equitable for the

allocation of property or undivided interest therein among the various trusts created herein and other recipients hereunder, and to make such division or distribution in money, in kind, or partly in money and partly in kind; and to determine for the purpose of such division or distribution the value of any securi-

ties or other property of the trust estates, and to select the date for such valuation as may be deemed most appropriate by the Trustees; . . ."

Section 5.01 further adds that "all decisions of the Trustees made in good faith shall be conclusive and binding upon all parties in interest."

■ When a trust instrument confers upon the trustees a discretionary authority, courts ordinarily will not interfere with the trustees' exercise of that discretion, except to prevent abuse by the trustees. *Oksner v. Jaco,* 646 S.W.2d 385, 386–87 (Mo.App. E.D.1983). "Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion." *Bolles v. Boatmen's Nat'l Bank of St. Louis,* 363 Mo. 949, 255 S.W.2d 725, 732 (1953). "Equity, not the trustee, is the final arbiter of reasonableness." Francis M. Hanna, *Missouri Practice Series, Trust Code and Law Manual,* Section 456.8–816, Author's Comment, "Discretion of Trustees."

We hold that the language of Section 5.01 of the Trust evidences Mr. Robert's intent that the Trustees' discretionary and equitable decisions regarding stock transactions and asset distributions be binding on the beneficiaries of the Trust, as well as on the estate. Grasso presents no evidence that the decisions made by the Trustees were made in bad faith. To the contrary, we find the Trustees' proposed distribution with the corresponding adjustment consistent with the overriding intent of Mr. Robert's estate plan. Therefore, we find that the Trustees' decision to "equalize the distributions" of Trust assets to the beneficiaries by making adjustments to the cash distributions is conclusive and binding on the beneficiaries, provided their

decision does not violate Missouri law or policy.

### B.  Missouri Law Not Violated

■ Having found a clearly defined intention of the testator set forth in Mr. Robert's Trust, we must further analyze whether this intention, "if carried out, will violate some positive rule of law, or subvert some rule of public policy." *Tidrow,* 688 S.W.2d at 12. If it does not, then "such intention must be allowed to control, and be effectuated by the courts." *Id.* Grasso argues that the proposed asset distribution violates the Trust's spendthrift provision. We consider Grasso's claim in light of the considerations set forth in *Tidrow.*

A spendthrift provision prohibits a beneficiary's interest from being assigned and prevents a creditor from attaching that interest. *Black's Law Dictionary,* 7th ed. (1999). *See also Electrical Workers, Local No. 1 Credit Union v. IBEW–NECA Holiday Trust Fund,* 583 S.W.2d 154, 157 (Mo. banc 1979). Grasso posits that the Trust's spendthrift clause prevents a beneficiary's interest from being pledged as security for the loan given to them. Grasso further suggests in her Appellant's brief that the Trustee's right of equitable retainer should be limited where, as here, the Trustee "entices the beneficiaries to borrow millions of dollars despite the obvious spendthrift clause, promises to make it non[–]recourse, never mentions the possibility of an offset, and then a couple months before the security for the note is due to evaporate with the final payment, distributes the note at a face value six and a half times it[s] highest potential worth." While Grasso's argument, as phrased, may tend to evoke a sympathetic response when viewed in isolation of all the facts before this Court, the argument lacks substance because Grasso fails to recognize that even a non-recourse promissory note has terms

of repayment. Given this substantive omission, we decline to limit the right of equitable retainer as Grasso suggests. We further find that the right of equitable retainer controls here, and does not conflict with either the non-recourse promissory note or the spendthrift provision.

■ More than a century ago, our courts described the principle of equitable retainer as a right of set-off where the legatee is indebted to the deceased or the estate. *In re Lietman's Estate,* 149 Mo. 112, 50 S.W. 307, 309 (1899).

> The indebtedness of a legatee constitutes assets of the estate, which it is the executor's or administrator's duty to collect for the benefit of creditors, legatees, and distributees. Hence such indebtedness may be deducted from any legacy or distributive share of the debtor; . . . And where the doctrine of retainer is recognized, the executor or administrator may retain against a legatee or distributee, or the assignee or transferee of such, for any debt due to the deceased, or to the executor or administrator in his fiduciary character. The right of set-off exists whether the legatee or distributee was indebted to the deceased before his death, or contracted a liability to the estate thereafter.

The *In re Lietman's Estate* court explained that the name of the proceeding used by the executor or administrator of an estate is of no consequence; "whether retainer, advancement, set off or assets in the hands of the legatee, the practical result is the same, and it rests upon wholesome principles of right and justice, which can be administered in probate courts, without the aid of a court of conscience. . . ." 50 S.W. at 309.

This common law rule of law since has been codified in Missouri's statutes at Section 473.630, which states:

When a distributee of an estate is indebted to the estate, the amount of the indebtedness if due, or the present worth of the indebtedness, if not due, may be treated as an offset by the executor or administrator against any testate or intestate property, real or personal, of the estate to which such distributee is entitled. An offset hereunder shall be treated as if made as of the time of the death of the decedent and interest shall be adjusted accordingly.

Section 473.630.

Similarly, the Restatement of Trusts sets forth the doctrine of equitable retainer as follows: "If the trustee makes an advance or loan of trust money to a beneficiary, the beneficiary's interest is subject to a charge for the repayment of the amount advanced or lent." Restatement (Second) of Trusts, Section 255.

Comment (f) to Section 255 of the Restatement (Second) of Trusts specifically addresses the effect of a spendthrift clause on the equitable retainer rule of law. According to the Restatement, the beneficiary's interest is subject to a charge for advances made to him out of trust property, unless the testator has manifested a different intention. Comment (f) states in full:

f. Spendthrift trust. Although the interest of the beneficiary is not transferable by him or subject to the claims of his creditors, his interest is subject to a charge for advances made to him out of the trust property unless the settlor has manifested a different intention.

The Restatement (Second) of Trusts, Section 251A, Comment b, further addresses the impact of a spendthrift provision on the doctrine of equitable retainer. The comment states:

b. Spendthrift trust. If it is provided in the will that the interest of the beneficiary should be free from the claims of his creditors and should not be assignable by him, the inference is that the testator intended that the beneficiary should be entitled to enjoy his interest even though he should fail to pay his indebtedness. This inference, however, may be overcome by evidence of a contrary intention. Thus, if a testator leaves all his property to his children in equal shares, but provides that the share of one of the children should be held upon a spendthrift trust for him, and some of the children, including that child, are indebted to the testator, the inference is that the amount owed by each child should be deducted from its share, and that the child for whom the spendthrift was created is not entitled to enjoy a share of the estate without deducting the amount of his indebtedness.

For guidance in this matter we also look to the Missouri Uniform Trust Code, which governs the duties and powers of the trustee and the interests of the beneficiaries except as otherwise provided in the terms of the trust. Specifically, the provisions of the code authorize trustees to "make loans out of trust property, including loans to a beneficiary on terms and conditions the trustee considers to be fair and reasonable under the circumstances." When such loans have been made, "[the trustee has] a lien on future distributions for repayment of those loans." Sections 456.1–105.1, 456.8–816(18), RSMo. The Uniform Trust Code Comment further states, "If the trustee requires security for the loan to the beneficiary, adequate security under this paragraph may consist of a charge on the beneficiary's interest in the trust." UTC Comment to Section 456.8–816(18) and (19).

We are mindful that the Comment explains that a beneficiary's interest subject to a spendthrift restraint may not be pledged as security for a loan. We note,

however, that the Comment does not distinguish between a loan from a creditor and a properly authorized loan made by the Trustee from the trust property pursuant to Section 456.1–105.1, RSMo. The Comment does not address applications of these statutory provisions to the presence of a spendthrift provision on the Trust document. Finding no Missouri precedent on this fact-intensive issue, the Restatement of Trusts guides us in determining that the beneficiaries here may be charged with the properly authorized loans made from the trust property, despite the presence of a spendthrift provision in the Trust.

■ In her Reply brief, Grasso argues that the Nine Siblings's reliance on Section 255 of the Restatement of Trusts and Section 456.8–816 of the Missouri Uniform Trust Code is misplaced. Grasso claims that these provisions provide no support for the trial court's entry of summary judgment because said provisions address advances or loans of trust money to a beneficiary. Grasso posits that the transactions at issue were not "loans" of trust money, but in fact were sales of stock to the beneficiaries. Accordingly, Grasso avers that the doctrine of equitable retainer does not apply. Grasso's failure to raise this argument or characterization of the transaction in her Appellant's brief would normally preclude our consideration of her argument. New arguments are not permitted in reply briefs, which "are solely to be used to 'reply' to arguments made by respondents in their briefs to our court and not to raise new points on appeal." *Kramer v. Mason,* 806 S.W.2d 131, 134 (Mo.App. E.D.1991). However, because there is no present disagreement among the parties that that transaction at issue was indeed a sale of stock, we gratuitously consider Grasso's argument.

Whether or not the specific transfers of stock are characterized as a loan or sale is of no consequence to our analysis because the transfer of the Company stock was made in exchange for a promissory note from Grasso and each of her siblings. The promissory note constituted an indebtedness of the beneficiaries to the Trust. *See Popovsky v. Griwach,* 361 Mo. 1120, 238 S.W.2d 363, 367 (1951) (promissory note constitutes an acknowledgement of debt). In essence, the Trust loaned each of the beneficiaries the purchase price of $3,911,400. We fail to see how this loan, which is embodied in the promissory notes issued to each of the beneficiaries, is not an indebtedness to which the doctrine of equitable retainer applies. Moreover, Grasso cites cited no authority to support her argument that our analysis should exclude consideration of Section 255 of the Restatement of Trusts and Section 456.8–816 of the Missouri Uniform Trust Code. While we understand Grasso's desire to steer this Court away from the guidance provided by these provisions, as well as the century old precedent of equitable retainer set forth in *In re Lietman's Estate,* later codified by Section 473.630, we decline Grasso's invitation to ignore these well established principles and make new law.

The transaction between the Trust and Grasso included an exchange of stock from Mr. Robert's estate, a Non–Recourse Promissory Note providing for Grasso's fixed annual payments to the Trust for such stock, a Stock Pledge Agreement as security for the promissory note providing that the purchased shares would be delivered to and held as security by the Trustee until final payment under the promissory note, and a Stock Redemption Agreement allowing the Company to redeem Grasso's stock if she failed to make the required payments for the stock purchased by her.

The Non–Recourse Promissory Notes were a mechanism to finance the transfer of the stock to the ten children from Mr. Robert's estate. Each of the ten children, including Grasso, accepted the Note as a promise to pay the money as reflected by the terms of the Note. For this Court to allow the obligations of the Notes to be forgiven by the Trust would require substantial evidence of Mr. Robert's intent. We find no such evidence in the record. As we are guided by the Restatement (Second) of Trusts and the Missouri Uniform Trust Code, we are not persuaded by Grasso that the trust's spendthrift provision provides evidence of such intent. The nonrecourse provision of the Promissory Notes did not prevent the application of retainer or set-off from the distributive share of the debtor, here Grasso. We hold that the non-recourse agreements entered into by the Trust with the beneficiaries simply limited the Trustees' remedies for nonpayment of the Notes: collecting the stock shares by the Company per the Stock Redemption agreements, or utilizing the equitable retainer doctrine authorized under established Missouri law to offset the indebtedness against the beneficiaries' share of the Trust assets. No other remedy outside of the Trust was available. Moreover, the distribution of Trust assets proposed by the Trustees does not run afoul of the non-recourse provisions as the Trustees do not attempt to collect amounts owed under the Notes by seeking to recover against the beneficiaries' personal assets.

Accordingly, we hold that the record clearly establishes the intent of the testator to devise his property equally among his ten children and that this intent controls. Mr. Robert's intent corresponds with the right of equitable retainer for property that the children received in advance of the asset distribution at issue. As analyzed above, there is no genuine issue of material fact that the asset distribution proposed by the Trustees does not violate the spendthrift provision of the Trust or the non-recourse nature of the promissory notes. Accordingly, Grasso's first point is denied.

II. **There is no genuine issue of material fact as to the value of the Notes and the obligations owed by the beneficiaries to the Trust under the Notes.**

In her second point on appeal, Grasso contends that even if this Court affirms the trial court's judgment that Mr. Robert's intent was to distribute his assets equally and in accordance with the law of equitable retainer, the value of the Notes is not yet determined and the case should be decided by a trier of fact. The Nine Siblings, however, argue that the amount of the outstanding debt is not a disputed issue of fact before the trial court.

Grasso's argument consists of conclusory statements that "there is evidence" that certain Notes are worth certain conflicting values. Yet Grasso cites only five pages of the legal file from which those discrepancies are taken, including documents not introduced into evidence before the trial court. Grasso provides no explanation for her conclusory statements. The Nine Siblings, in response, explain that the original Proposed Distribution schedule referenced by Grasso was attached to the original and now abandoned petition, preceding the filing of the Amended Petition. Upon filing of an amended petition, the original petition and all its attachments were abandoned. *Rozier v. Nations*, 178 S.W. 740, 741 (Mo.1915). Further, as explained in the Petitioners' Joint Motion for Leave to File an Amended Verified Petition for Instructions, a transposition error created a difference in values set forth in

the outstanding principal balance of eight of the ten Notes. Therefore, any values cited by Grasso taken from the original Proposed Distribution schedule are meaningless and offer no support for this point on appeal.

Further, we find evidence in the record that Grasso admitted that the balance of the Non–Recourse Promissory Note secured by her 9,664 remaining stock shares was $2,611,146.65 as of August 20, 2007. As this balance is also listed as Grasso's principal balance on the Revised Distribution schedule attached to Exhibit M of the Amended Petition, we find Grasso's admission a deciding factor here. Grasso has admitted to the amount of unpaid principal balance that was used in the same distribution she now contests. Neither has Grasso disputed the value of her accrued interest included on the Revised Distribution schedule attached to Exhibit M of the Amended Petition. Just as the trial court found no "substantial competent evidence in the record" to support Grasso's contention that the valuations of the Notes are erroneous, we too, find none.

Finding no genuine dispute of material fact as to the values of the Notes, Grasso's second point on appeal is denied.

### Conclusion

The judgment of the trial court is affirmed.

ROBERT G. DOWD, JR. and NANNETTE A. BAKER, JJ., Concur.